**OHIO BUREAU OF WORKERS' COMPENSATION, Appellee,**

**v.**

**WIDENMEYER ELECTRIC COMPANY et al., Appellants.**

[Cite as *Ohio Bur. of Workers' Comp. v. Widenmeyer Elec. Co.* (1991), 72 Ohio App.3d 100.]

Court of Appeals of Ohio,
Medina County.

No. 1906.

Decided Jan. 9, 1991.

*Donald E. Miehls,* for appellee.

*John C. Oberholtzer,* for appellants.

BAIRD, Judge.

This cause comes before the court upon the appeals of Widenmeyer Electric Company ("WEC II"), an Ohio corporation, and Thomas A. and Sharon A. Widenmeyer from the judgment of the Medina County Court of Common Pleas.

The first Widenmeyer Electric Company ("WEC I") was incorporated by the Widenmeyers in 1975. In January 1975, WEC I applied for, and was granted, coverage under the Ohio workers' compensation system. In 1979, the Widenmeyers formed a second corporation, Medina Electric Company. Shortly after forming the second corporation, the Widenmeyers merged it with WEC I, and named the new corporation Medina Electric Company ("Medina Electric"). The Widenmeyers notified appellee Bureau of Workers' Compensation of the merger, and the risk number originally assigned to WEC I was transferred to Medina Electric.

Sharon was the president and sole shareholder of Medina Electric. Thomas acted as its general manager and made all the business decisions. The corporation was operated out of the Widenmeyers' home, and was engaged in electrical contracting for commercial, industrial and highway work.

In 1984, many of Medina Electric's general contractors failed to pay the company and it began experiencing business problems. The company soon failed. At the same time, Medina Electric neglected to pay premiums for its workers' compensation coverage for the periods of January 1, 1984 to June 30, 1984, and July 1, 1984 to December 31, 1984.

In August 1984, Medina Electric's bonding company, St. Paul Insurance Company ("St. Paul"), assumed all of Medina Electric's contracting jobs. In addition, St. Paul acquired all of the company's inventory and accounts receivable. Medina Electric's only remaining assets were some vehicles and equipment.

Ameritrust Bank and National City Bank held security interests in these remaining assets as collateral for a loan to Medina Electric. To avoid imminent foreclosure, the Widenmeyers retired these loans by paying both

banks approximately $100,000 from their own assets. Sharon was then listed as first lien holder on the vehicles and equipment.

In November 1984, the Widenmeyers formed the second Widenmeyer Electric Company ("WEC II"), and transferred Medina Electric's remaining vehicles and equipment to the new corporation without apparent consideration. Medina Electric was never dissolved, but was left with no assets. WEC II applied for, and was granted, coverage under the workers' compensation system. WEC II was assigned a different risk number than that of Medina Electric.

As was the case with Medina Electric, Sharon was the president and sole shareholder of WEC II. Thomas acted as its general manager and made all the business decisions. WEC II was operated out of the Widenmeyers' home, and was engaged in commercial, industrial and highway electrical contracting. At least six employees of WEC II had worked for Medina Electric.

On November 7, 1985, appellee obtained a $12,862.19 judgment against Medina Electric for the unpaid 1984 workers' compensation premiums and penalties. In November 1987, the state filed a complaint alleging that WEC II was the successor to Medina Electric, and that the Widenmeyers were the alter egos of Medina Electric, rendering the Widenmeyers and WEC II liable for the November 7, 1985, judgment.

Following a bench trial, the trial court found that WEC II, and Thomas and Sharon Widenmeyer, individually, were liable to the state on the earlier judgment against Medina Electric. All three defendants appeal, raising two assignments of error.

### Assignment of Error I

"A new independent corporation should not be held liable for a workers' compensation lien of a separate pre-existing corporation merely because the new corporation carries on similar work and has similar employees and officers."

■ The general rule of successor corporation liability states that where a corporation sells or otherwise transfers all of its assets to a second corporation, the transferee will not be liable for the debts of the transferor unless one of the following four exceptions applies:

"(1) the buyer expressly or impliedly agrees to assume such liability;

"(2) the transaction amounts to a *de facto* consolidation or merger;

"(3) the buyer corporation is merely a continuation of the seller corporation; or

"(4) the transaction is entered into fraudulently for the purpose of escaping liability. * * *" *Flaugher v. Cone Automatic Machine Co.* (1987), 30 Ohio St.3d 60, 62, 30 OBR 165, 167, 507 N.E.2d 331, 334.

Although the Ohio Supreme Court has utilized the above test only to impose successor product liability, many other jurisdictions have applied the test to include situations involving other types of corporate liabilities. See Annotation (1973), 49 A.L.R.3d 881. Furthermore, the Ohio Supreme Court has imposed successor liability for corporate debts other than product liability under general principles of equity. See *Auglaize Box Board Co. v. Hinton* (1919), 100 Ohio St. 505, 518, 126 N.E. 881, 885. Therefore, we believe the above test may be applied to the facts of the instant case.

■ Appellants first argue that the trial court cannot impose successor liability upon WEC II because Medina Electric was never dissolved. We disagree. Pursuant to the above-stated rule, successor liability does not arise when the transferor corporation is dissolved, but arises when the transferee corporation has so depleted the transferor's assets as to leave creditors' claims unsatisfied.

■ The appellants next argue that the trial court erred in finding that WEC II was merely a continuation of Medina Electric. The essence of appellants' claim is that the trial court's ruling was against the manifest weight of the evidence.

The weight to be given the evidence and the credibility of witnesses are primarily for the trier of the facts. *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Accordingly, when asked to reverse a verdict based on the manifest weight of the evidence, this court's standard of review is limited. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

Our review of the record indicates that the trial court's finding, that WEC II was the mere continuation of Medina Electric, was supported by competent credible evidence. The testimony of Thomas Widenmeyer established that, following the transfer of all of Medina Electric's remaining assets to WEC II, both corporations shared the same officer, sole shareholder, general manager and employees. Furthermore, both corporations operated out of the Widenmeyers' home and engaged in the same type of business.

The trial court did not err in imposing successor liability upon WEC II. Appellants' first assignment of error is overruled.

### Assignment of Error II

"The corporate veil should not be pierced to hold employees and officers of a corporation personally liable for a workman's [*sic*] compensation lien when those employees and officers are not the alter ego of the corporation."

█ The concept that a corporation is a legal entity, separate and apart from the natural persons who compose it, is a legal fiction designed to facilitate the transacting of business. *State, ex rel., v. Standard Oil Co.* (1892), 49 Ohio St. 137, 30 N.E. 279, paragraph one of the syllabus. However, where the corporate form is used to subvert the intent and policy of this fiction, the fiction should be disregarded and the corporation considered a collection of individuals. *Id.* at 177–178, 30 N.E. at 287.

█ Although there is no precise test for "piercing the corporate veil" and imposing "alter ego liability," the Sixth Circuit Court of Appeals, applying Ohio law, has held that the corporate fiction should be disregarded when:

"(1) domination and control over the corporation by those to be held liable is so complete that the corporation has no separate mind, will, or existence of its own;

"(2) that domination and control was used to commit fraud or wrong or other dishonest or unjust act, and

"(3) injury or unjust loss resulted to the plaintiff from such control and wrong. * * *" *Bucyrus–Erie Co. v. General Products Corp.* (C.A.6, 1981), 643 F.2d 413, 418.

Applying the above principles to the instant case, we find that the trial court erred in holding Thomas and Sharon Widenmeyer personally liable to appellee for the debts of Medina Electric.

█ While the evidence presented at trial established that the Widenmeyers exerted excessive domination and control over Medina Electric, their dominance was not used to commit a fraud or other wrongful act. Appellee does not allege, and the record does not indicate, that Medina Electric's failure to pay the workers' compensation premiums resulted from the Widenmeyers' failure to observe corporate formalities. In addition, appellee does not allege that it was fraudulently induced by the appearance of a corporate form to provide coverage for Medina Electric. Finally, the appellee's inability to collect the earlier judgment from Medina Electric did not result from the Widenmeyers' ignoring the corporate form. Instead, appellee acknowledges in its brief that Medina Electric's inability to pay the earlier judgment resulted from the foreclosure by St. Paul and the transfer of Medina Electric's remaining assets to WEC II.

Because the Widenmeyers' excessive control and domination over Medina Electric was not used to commit a fraud or wrong upon appellee, the trial court erred in piercing the corporate veil and holding the Widenmeyers individually liable for the earlier judgment against Medina Electric. The appellants' second assignment of error is sustained.

The judgment of the trial court is affirmed in part and reversed as to the issue of the Widenmeyers' individual liability. The cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment accordingly.*

REECE, P.J., and CIRIGLIANO, J., concur.