United States Court of Appeals
For the First Circuit


No. 95-1181

RANDY JORDAN,

Plaintiff, Appellant,

v.

HAWKER DAYTON CORPORATION and EAST DAYTON TOOL & DIE CO.,

Defendants, Appellees.



APPEAL FROM THE UNITED STATES DISTRICT COURT 

FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge] 



Before

Cyr, Boudin, and Lynch, Circuit Judges. 



Laurie Ann Miller, with whom N. Laurence Willey, Jr. and Ferris, 
Dearborn & Willey were on brief, for appellant. 
Brent A. Singer, with whom David C. King and Rudman & Winchell 
were on brief, for appellee Hawker Dayton Corporation.



August 10, 1995


LYNCH, Circuit Judge. Randy Jordan, an injured LYNCH, Circuit Judge. 

worker, appeals, asking us to revisit the law of Maine on

successor liability so that he may reach the Hawker Dayton

Corporation, which purchased the assets of a division of

another company that had manufactured the machinery which

injured Jordan's hand. Sitting as a court in diversity

jurisdiction under Erie Railroad v. Tompkins, 304 U.S. 64 

(1938), we decline to do so and affirm the grant of summary

judgment issued in favor of Hawker Dayton Corporation by the

district court. 

FACTS 

In September 1991, the appellant, Randy Jordan,

badly injured his hand at work while attempting to unjam a

doweling machine. Jordan underwent medical and psychological

treatment, and filed this products liability action in the

United States District Court for Maine against "Hawker Dayton

Manufacturing Company."

The doweling machine was manufactured in 1973 by

Hawker Manufacturing Company ("Hawker Manufacturing"), a

division of East Dayton Tool & Die Co. ("East Dayton"). East

Dayton also manufactured automobile components and other

products. Around the time that the doweling machine was

manufactured, Dorothy Darrow, the sole shareholder of East

Dayton, sold some of her stock to family friends, and East

Dayton redeemed her remaining stock for cash and an

-2- 2

installment note. The company continued its manufacturing

operations and even added additional product lines.

In August 1973, East Dayton sold to Harmon Darrow,

the president of Hawker Manufacturing, an option to purchase

the assets of Hawker Manufacturing at their net book value.

In March 1974, Mr. Darrow formed Hawker Dayton Corporation

("Hawker Dayton"), conveyed his option to that company, and

in July 1974, Hawker Dayton exercised the option and

purchased the Hawker Manufacturing assets for approximately

$150,000. Hawker Dayton continued the operations of Hawker

Manufacturing and continued to use the Hawker Manufacturing

trade name. East Dayton continued to manufacture woodworking

machines (including doweling machines at first), automobile

dies and other specialized machinery for about two years.

In 1976, East Dayton defaulted on its note to Ms.

Darrow. It then sold the rest of its equipment for $925,000

and its real property for $650,000 to entities not involved

in this lawsuit, and made payments out to Ms. Darrow on the

installment note for the next ten years.

PROCEEDINGS BELOW 

On June 14, 1993, Jordan filed this suit. In

August, the district court issued a scheduling order giving a

deadline of September 15, 1993, for amendment of the

pleadings. The judge later amended the scheduling order,

extending the deadline for amending pleadings by fifteen days

-3- 3

and extending the discovery deadline by two months. During

discovery, Jordan learned, inter alia, that East Dayton was 

the manufacturer of the doweling machine. On February 10,

1994, five days before discovery was to be completed under

the scheduling order, Jordan moved to correct the corporate

name of the defendant from "Hawker Dayton Manufacturing

Corporation" to "Hawker Dayton Corporation," to add East

Dayton as a defendant and to include additional theories of

liability against Hawker Dayton. The district court granted

the motion to correct the corporate name of the defendant and

to add East Dayton, but denied the motion to add additional

theories of liability.

Jordan filed a motion for summary judgment on the

issue of whether Hawker Dayton was liable as a successor

corporation for the debts and liabilities of East Dayton.

Hawker Dayton objected, and in its response asked that

summary judgment be entered in its favor instead. The

Magistrate Judge recommended that Jordan's motion be denied,

and the district court adopted the recommendation. Neither

ruled on the issue of whether summary judgment should be

entered on behalf of Hawker Dayton. Hawker Dayton

subsequently moved for summary judgment, and the district

court granted the motion.

Judgment by default was entered against East

Dayton, after a hearing on damages, for $2,230,088.21.

-4- 4

Jordan appeals the grant of summary judgment in

favor of Hawker Dayton on the issue of successor liability.

DISCUSSION 

Four years ago, albeit in a different context than

a tort suit, the Supreme Judicial Court of Maine held, as to

corporate successor liability: "[A]bsent a contrary

agreement by the parties, or an explicit statutory provision

in derogation of the established common law rule, a

corporation that purchases the assets of another corporation

in a bona fide, arm's-length transaction is not liable for 

the debts or liabilities of the transferor corporation."

Director of Bureau of Labor Standards v. Diamond Brands, 

Inc., 588 A.2d 734, 736 (Me. 1991). Diamond Brands involved 

interpretation of the term "employer" in a severance pay

statute. Conceding that there is no contrary agreement by

the asset purchase parties and no statutory exception to

common law here, Jordan tries to avoid the Diamond Brands 

holding by arguing the opinion does not foreshadow what the

Maine Court would do in a tort action. 

There are two responses. First, the rule, as

stated above, that a mere asset purchase will not give rise

to successor liability is articulated by Maine's highest

court as being "the established common law rule." That alone

defeats Jordan's claim, as he has argued that Maine law

applies. This common law rule is reinforced by the social

-5- 5

policy judgment made by the Maine legislature, in the statute

at issue in Diamond Brands. Maine there decided that it is 

benefited by not discouraging purchases of assets of Maine

businesses through imposition of successor liability on

purchasing corporations, thus keeping businesses going which

would otherwise fail, and so continuing to have employees

benefit from their continued employment. Id. at 737 n.7. 

Jordan points to no legal developments in the law of

successor liability in Maine or in any other jurisdiction

since Diamond Brands to suggest that the Supreme Judicial 

Court would change this law. See Bernhardt v. Polygraph Co. 

of America, 350 U.S. 198, 205 (1956) ("[T]here appears to be 

no confusion in the [Maine] decisions, no developing line of

authorities that casts a shadow over the established ones, no

dicta, doubts or ambiguities in the opinions of [Maine]

judges on the question, no legislative development that

promises to undermine the judicial rule."). Thus, Diamond 

Brands is the law of Maine, and this Court must apply that 

law.

Secondly, plaintiff chose a federal, rather than a

state forum, presumably cognizant of this court's statement

that "litigants who reject a state forum in order to bring

suit in federal court under diversity jurisdiction cannot

expect that new trails will be blazed." Ryan v. Royal 

Insurance Company of America, 916 F.2d 731, 744 (1st Cir. 

-6- 6

1990). Jordan did not file a motion that the issue be

certified to the state court. Here Jordan has suffered an

injury and East Dayton appears to no longer have assets with

which to satisfy his claim. But the complex policy arguments

as to whether the common law should strive to assure him

recompense are left to the state, not the federal court, to

decide. Here Maine has made that calculus and given the

greater weight to the protection of jobs through limits on

successor liability. It is not the role of the federal

courts to "question the policy choices of states whose law we

apply." Krauss v. Manhattan Life Insurance Company of New 

York, 643 F.2d 98, 102 (2d Cir. 1981). 

Jordan argues that the Supreme Judicial Court

recently adopted a "majority rule" in another aspect of tort

law and so will adopt the majority rule as to successor

liability. Jordan relies on Oceanside at Pine Point 

Condominium Owners Association v. Peachtree Doors, Inc., 659 

A.2d 267, 270 (Me. 1995), which held that a plaintiff did not

state a claim in tort for a defective product's damage to

itself, thus having Maine join that rule adopted by a

majority of jurisdictions. Even were we incorrect in our

understanding that the law of Maine on successor liability

has been determined by its highest authority, this argument

would not assist Jordan. The Peachtree Doors decision does 

not expand plaintiffs' remedies, but reflects a rejection of

-7- 7

such an expansion. More tellingly, even if Maine were to

adopt a "majority rule" as to successor liability, Jordan

would still not prevail. Assuming the majority rule to be

that a corporation which purchases assets from another is not

liable in tort for the actions of the transferor unless one

of four exceptions is met, see, e.g., 1 American Law of 

Products Liability 7:1 at 10-11 (3d ed. 1990), those 

exceptions avail Jordan naught. See also Ohio Bureau of 

Workers' Compensation v. Widenmeyer Electric Co., 593 N.E.2d 

468, 470 (Ohio 1991); Ramirez v. Amsted Industries, Inc., 86 

N.J. 332, 340, 431 A.2d 811, 815 (1981); Ray v. Alad Corp., 

19 Cal.3d 22, 28, 560 P.2d 3, 7 (1977). There was no

agreement by Hawker Dayton, express or implied, to assume the

liabilities of East Dayton Tool and Die Co., and Jordan does

not claim that the asset sale was fraudulent, not made in

good faith, or made without sufficient consideration. There

was no de facto merger nor a mere continuation of the

predecessor here where the transferor corporation, East

Dayton, neither dissolved nor liquidated after the asset

sale. See, e.g., 1 American Law of Products Liability, 

supra, 7:10, 7:12, 7:14 & 7:15 (both merger or 

consolidation and mere continuation exceptions require that

there be only one corporation at the end of the transaction).

Indeed East Dayton sold less than 10% of its assets to Hawker

-8- 8

Dayton, continued to do business thereafter and paid out on

an installment note for twelve years after the asset sale.

Jordan's argument ultimately is that the "product

line" doctrine of successor liability should be adopted.

Under the product line doctrine, a corporation that purchases

all or substantially all of the assets of another

corporation, continues the manufacturing operations and sells

the same product line may be strictly liable for injuries

caused by defective products in that line. See, e.g., 1 

American Law of Products Liability, supra, 7:25 at 42; see 

also Ray, 19 Cal.3d 22, 560 P.2d 3; Ramirez, 86 N.J. 332, 431 

A.2d 811 (1981); Dawejko v. Jorgensen Steel Company, 290 Pa. 

Super. 15, 434 A.2d 106 (1981); Martin v. Abbott 

Laboratories, 102 Wash.2d 581, 689 P.2d 368 (1984). It is 

far from clear the product line doctrine would assist Jordan.

See, e.g., Ray, 19 Cal.3d at 31; 560 P.2d at 9; Ramirez, 86 

N.J. at 358, 431 A.2d at 825 (the product line exception

requires that the asset purchase destroy the plaintiff's

remedy, for example, because all of the assets are purchased

or because the purchase agreement requires the predecessor to

liquidate). This doctrine is at most a minority rule which

has plainly not been adopted by Maine.

Finally, Jordan makes a procedural argument that

the court was precluded from entering summary judgment for

Hawker Dayton because it failed to do so when Hawker Dayton

-9- 9

had countered his motion in part by saying that it, not

Jordan, was entitled to entry of judgment. The court

originally denied Jordan's motion and took no action on

Hawker Dayton's counter request. When Hawker Dayton later

filed a formal motion for summary judgment in its favor, the

court granted it, saying it had not considered the merits of

Hawker Dayton's request when it denied Jordan's motion.

There was no error in this procedure and would have been none

even if the court had considered the counter request the

first time around. See Burns v. Massachusetts Institute of 

Technology, 394 F.2d 416, 418 (1st Cir. 1968). Nor was there 

an abuse of discretion in denying Jordan's motion to amend

his complaint filed more than four months after the deadline

set in the scheduling order and only a few days before

discovery was to be completed.

The decision of the district court granting summary

judgment to Hawker Dayton is affirmed.

-10- 10