This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant-Appellant Louis E. Kovanda has appealed from a judgment of the Summit County Common Pleas Court that awarded Plaintiff-Appellee Mary Frechette $176,117.30. This Court reverses.
 I.
Mary Frechette is the sole shareholder of G J Industries, Inc. (Industries), and her husband, John, is the acting president of the company. During 1995, John was approached by Baytree Investors Inc., an investment group, concerning the purchase of Industries. Negotiations began between the Frechettes and Christopher Jansen, an employee from Baytree who acted as an agent for Louis Kovanda. First Capital Corporation (FCC) was contacted to finance the purchase and began an audit of Industries to verify there was enough collateral to secure the loan.
On December 10, 1995, Mary Frechette signed a purchase agreement with G J Holdings (Holdings). According to the purchase agreement, Holdings may form a new corporation not named in the agreement to complete the transaction. The transaction consisted of Mary Frechette selling to Holdings all of her stock in Industries. According to the testimony at trial, the parties agreed that Kovanda would purchase Industries from Mary Frechette through his existing holding company, FETLA and change the name to Holdings. John Frechette would also continue to work for the company.
After FCC was satisfied with its examination, a meeting was arranged to sign the loan documents. On February 13, 1996, a corporate resolution was adopted by in which Kovanda was named president of Industries and was authorized to borrow money from FCC. At that same meeting, Kovanda signed all the loan documents as president of Industries and Mary Frechette signed a trustee and custodian agreement that appointed her as a fiduciary on behalf of FCC. Mary Frechette also signed collateral report forms that contained an assignment and security agreement where all present and future accounts receivable were assigned to FCC as security for the loan.
Next, Kovanda wrote two personal checks to Industries that totaled $60,000. It was understood by the parties that the checks were supposed to provide for any shortfall in the corporate cash flow. FCC also disbursed $100,000 on behalf of Industries to pay off a loan and disbursed $85,000 into Mary Frechette's personal account. Shortly thereafter, Kovanda notified the Frechettes and FCC that he was not going to purchase the stock of Industries and cancelled the purchase agreement. Kovanda stopped payment on both of his personal checks. Baytree prepared a letter that was signed by Kovanda which stated that his reasons for canceling the agreement were that: (1) the Frechettes failed to provide a true and complete financial statement regarding their company; (2) the Frechettes failed to report an adverse change in the company's financial condition; (3) the Frechettes made false and misleading statements regarding the business condition of Industries; (4) the Frechettes failed to provide complete statements regarding the ownership of property used by Industries; and, (5) the Frechettes failed to advise Kovanda of leasing arrangements between Industries and other companies owned by the Frechettes which were characterized as a method of financial support for the other companies.
On June 20, 1996, FCC filed a complaint against Industries, the Ferchettes, Kovanda, FETLA and Industries' attorneys requesting judgment on the loan and security agreements executed on February 13, 1996. At some point, Kovanda, FETLA and Industries' attorneys were dismissed. The case proceeded to a jury trial, and the jury found in favor of FCC on all claims.
On December 16, 1997, Mary Frechette filed a complaint in Summit County against Kovanda and Holdings for breach of contract, negligent misrepresentation and fraud. The matter went to binding arbitration pursuant to paragraph eleven of the purchase agreement. The arbitrators determined that Kovanda and Holdings were joint and severally liable to Mary Frechette for breach of contract, negligent misrepresentation and fraud.
On April 13, 1999, Kovanda moved the trial court to vacate or modify the arbitration award pursuant to R.C. 2711.10 and 2711.11, arguing that the arbitrators exceeded their powers as: (1) they had no jurisdiction over Kovanda; (2) the arbitrators had no authority to change the provisions of the agreement; (3) the arbitrators misapplied the law and burden of proof relating to fraud; (4) the award was against the manifest weight of the evidence; and, (5) the arbitrators showed prejudice in handling the case. Mary Fechette responded in opposition and moved the trial court to confirm the arbitration award. Holdings did not respond to the motions. On September 29, 1999, the trial court confirmed the award against Holdings but set aside the award against Kovanda, holding that the arbitrators had no personal jurisdiction over him.
Shortly thereafter, Mary Frechette moved to amend her complaint to include the doctrine of piercing the corporate veil, which the trial court granted. The matter then proceeded to trial without a jury. At the close of Mary Frechette's case, the trial court directed verdict in favor of Kovanda individually on the claims of breach of contract, fraud and negligent misrepresentation. However, the trial court found that there was sufficient evidence to proceed with the theory of piercing the corporate veil. At the end of the trial, the court allowed Mary Frechette to pierce the corporate veil and found Kovanda individually liable. Kovanda timely appealed, asserting two assignments of error. For ease of discussion, this Court has consolidated Kovanda's arguments.
 II. Assignment of Error Number One The judgment is contrary to law because the lower court incorrectly interpreted the law.
 Assignment of Error Number Two The judgment is contrary to law because the lower court incorrectly applied the law.
In his first and second assignments of error, Kovanda has argued that the trial court erred in interpreting and applying the doctrine of piercing a corporate veil. Additionally, he has asserted that if the trial court had applied the appropriate law, the trial court would not have ruled in favor of Mary Frechette with regard to her claim of piercing the corporate veil. This Court will first discuss the appropriate legal standard for piercing a corporate veil before reviewing the evidence in this case.
Generally, shareholders are not liable for the debts of the corporation. Belvedere Condominium Unit Owners' Assn. v. R.E. RoarkCos., Inc. (1993), 67 Ohio St.3d 274, 287. An exception exists where creditors of a corporation may "pierce the corporation's veil" and hold individual shareholders liable when the following three conditions present:
 [T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the Appellees from such control and wrong.
Id. at 289. The first prong of the Belvedere test is basically the "alter ego doctrine." See Willoway Nurseries v. Curdes (Oct. 13, 1999), Lorain App. No. 98CA007109, unreported, at 4. In order to satisfy this requirement, a plaintiff must prove that the individual and the corporation are fundamentally indistinguishable. Belvedere,67 Ohio St.3d at 288. Some of the factors used to determine if this standard has been met include: (1) whether corporate formalities were observed; (2) whether corporate records were kept; (3) whether corporate funds were commingled with personal funds; and (4) whether corporate property was used for a personal purpose. LeRoux's Billyle Supper Club v. Ma (1991),77 Ohio App.3d 417, 422-423.
When evaluating whether a judgment is against the manifest weight of the evidence in a civil context, the standard of review is the same as that in the criminal context. Frederick v. Born (Aug. 21, 1996), Lorain App. No. 95CA006286, unreported, at 14. In determining whether a criminal conviction is against the manifest weight of the evidence:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175; see, also State v. Otten (1986),33 Ohio App.3d 339, 340.
The judgment entry in the present case reveals that the trial court found that the doctrine of piercing the corporate veil was not applicable to the facts in this case because Holdings was not a legal corporation at the time the parties signed the purchase agreement.[1] Nevertheless, the trial court deemed that the elements of the doctrine were applicable to the case and found that:
 a. Kovanda's control over [Holdings] was so complete that [Holdings] had no separate mind, will, or existence of its own;
 b. Injustice or unfairness results from maintaining the corporate fiction; [Bucyrus-Erie Co. v. Gen. Prod. Corp., (C.A.6, 1981) 643 F.2d 413, 418; Ohio Bur. Of Workers' Comp. v. Widenmeyer Elec. Co. (1991), 72 Ohio App.3d 100]
 c. Injury or unjust loss resulted to the Plaintiff from such control or wrong. [Bucyrus-Erie]
Based on the foregoing, this Court concludes that the trial court erred when it applied the alter ego theory as a matter of law and did not follow the test set forth in Belvedere. Although the alter ego theory is the first prong of the Belvedere test, the trial court did not consider the second prong of whether Kovanda's control over Holdings was exercised in such a manner as to commit fraud or an illegal act against Mary Frechette.
Furthermore, in reviewing the record of the present case, this Court concludes that the decision of the trial court is against the manifest weight of the evidence. At trial, Mary Frechette relied on the fact that Kovanda set up the financing with FCC and then left her with the loan when he cancelled the purchase agreement as support for her claim of piercing the corporate veil. The evidence established that, after Kovanda cancelled the agreement, Industries experienced financial problems with FCC concerning the terms of the loan. Ultimately, Mary Frechette and Industries were bound by the terms of the loan. See First Capital Corp.v. G J Industries, Inc. (1999), 131 Ohio App.3d 106, 117-118. Lastly, Mary Frechette pointed to the fact that Kovanda later purchased another business similar to Industries as evidence that Kovanda intended to defraud Industries.
In reviewing the record, this Court concludes that the evidence adduced at trial was inadequate to prove that Kovanda's control over Holdings resulted in fraud or an illegal act against Mary Frechette. Although Mary Frechette established that Industries experienced financial problems and that Kovanda later purchased another business, she has failed to demonstrate how Kovanda's control over Holdings was an act of fraud or illegal and how his actions ultimately caused her injury. Furthermore, the trial court directed verdict in favor of Kovanda because Mary Frechette failed to establish that Kovanda individually committed fraud or any false promise. Accordingly, Kovanda's arguments are well taken.
 III.
Kovanda's first and second assignments of error are sustained. The judgment of the trial court is reversed. Pursuant to App.R. 12(B), this Court enters judgment with regard to the claim of piercing the corporate veil in favor of Kovanda.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellee.
Exceptions.
______________________________________ BETH WHITMORE
SLABY, P.J., CARR, J. CONCUR.
[1] This Court notes that the evidence in this case indicates that Holdings was not a valid legal entity, therefore, the trial court should not have applied the doctrine of piercing the corporate veil as there was no valid corporation to pierce. However, this Court will assume arguendo
that the corporation is valid and address the elements of Belvedere
because the arbitration award found Holdings liable for breach of contract, fraud and negligent misrepresentation.