**Nancy L. BLY, Administratrix of Wayne A. Bly, deceased, Appellee,**

v.

**OTIS ELEVATOR COMPANY, a New Jersey Corporation, Appellant.**

**No. 82–1430.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 13, 1983.

Decided Aug. 4, 1983.

---

Jean-Pierre Garnier, Falls Church, Va., for appellant.

Stephen D. Annand, Alexandria, Va. (Cohen & Annand, P.C., Charles Shepard Cox, Jr., Alexandria, Va., on brief), for appellee.

Before WINTER, Chief Judge, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

Otis Elevator Co. appeals from a final judgment in the district court, entered on a general jury verdict, holding it liable on a breach of warranty theory for personal injuries suffered by plaintiff's decedent. Because there was error in the jury instructions regarding the manufacturer's duty to warn as an element of the warranty of merchantability, we vacate the judgment and remand for a new trial.

### I

Plaintiff's decedent, Wayne Bly, was injured while operating a lift truck at the Avtex Fibers Plant in Virginia where he was employed. The truck was equipped in the front with a lift mechanism used to transport large canisters throughout the factory, and in the rear with a shin-high guard designed to provide protection from objects encountered while the truck was travelling in reverse. Operators of this and other lift trucks owned by Avtex stand on a small platform at the rear of the truck with their torso facing forward to maneuver the steering and other controls. Because the large canisters impair visibility to the front, the trucks are driven in reverse around the plant, necessitating that operators look over their shoulders in the direction of travel.

The particular truck Bly was driving when he sustained injury was manufactured by Baker Raulang Co., which sold the truck to the predecessor-in-interest of Avtex in 1944. Baker Raulang last exercised control over the truck in 1948, when it modified the truck's lift mechanism.

The parties agree that Bly was injured in September 1979 when he backed his truck without looking behind him and ran into a canister perched on the front-end lift of another truck. Because that canister was raised off the floor, the shin-high guard on Bly's truck slipped underneath, and Bly was crushed between the canister and the controls of his truck.

Bly's mother, as administratrix of his estate, then instituted the present wrongful death action against Otis Elevator Co.—the successor-in-interest to Baker Raulang—seeking relief on the basis of negligence and breach of warranty for alleged defects in the lift truck. The district court granted Otis's motion for directed verdict on the negligence count, holding as a matter of law that Bly's contributory negligence barred recovery. Accordingly, the case went to the jury solely on a theory of breach of the implied warranty of merchantability.

On appeal from the judgment entered on a jury verdict for the plaintiff, Otis contends there was insufficient evidence to support a verdict on this theory, and that the trial court's jury instructions erroneously included a charge on the manufacturer's duty to warn. We sketch briefly the contours of an action for breach of warranty, and then turn to the merits of these claims.

### II

Under Virginia law, which the parties agree controls resolution of this diversity action, manufacturers and sellers of defective products can be held liable on theories of negligence and breach of the implied warranty of merchantability. *See*

*Featherall v. Firestone Tire & Rubber Co.,* 219 Va. 949, 961–64, 252 S.E.2d 358, 367 (1979); *Logan v. Montgomery Ward & Co.,* 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975); *see also* Va.Code §§ 8.2–314, 8.2–318 (1965). A personal injury or wrongful death claimant may recover for breach of warranty under Virginia law by establishing "(1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands." *Logan v. Montgomery Ward & Co.,* 216 Va. at 428, 219 S.E.2d at 687. A product can be "unreasonably dangerous" if defective in assembly or manufacture, *see, e.g., Matthews v. Ford Motor Co.,* 479 F.2d 399, 400 (4th Cir.1973), if imprudently designed, *see, e.g., Dreisonstok v. Volkswagenwerk, A.G.,* 489 F.2d 1066, 1071 (4th Cir.1974), or if not accompanied by adequate warnings about its hazardous properties, *see, e.g., Spruill v. Boyle-Midway, Inc.,* 308 F.2d 79, 85–86 (4th Cir.1962).

### III

We dispose quickly of Otis's contention that the evidence adduced on trial was insufficient to support the jury verdict.[1]

The primary theory of plaintiff's breach of warranty claim was that the lift truck as designed was defective and "unreasonably dangerous" because its shin-high guards provided inadequate protection to the operator in rear-end collisions. In support of this theory, plaintiff produced substantial expert and documentary evidence which if accepted by the jury indicated that, by the 1940's when this truck was manufactured and sold, industry and government circles had recognized the need for waist-high guards on such lift trucks as a reasonable means of ensuring greater safety. *Cf. Dreisonstok v. Volkswagenwerk, A.G.,* 489 F.2d 1066, 1073 (4th Cir. 1974) ("if an article can be made safer and the hazard of harm may be mitigated 'by an alternative design or device at no substantial increase in price,' then the manufacturer has a duty to adopt such a design"). In light of this evidence suggesting that waist-high guards reflected prevailing industry views on the appropriate level of operator protection at the time this lift truck was manufactured and sold, coupled with expert testimony opining that the truck was, in this sense, defective in design, a jury could certainly conclude that a lesser standard of protection was "unreasonable" and a breach of the warranty of merchantability that proximately caused Bly's death.[2] *See Foster v. Ford Motor Co.,* 616 F.2d 1304, 1311 (5th Cir.1980); *Weakley v. Fischbach & Moore, Inc.,* 515 F.2d 1260, 1268–69 (5th Cir.1975).

A jury verdict that unquestionably rested upon this theory of defective design would accordingly have been unassailable. That this was the basis of the verdict is not, however, certain, and in consequence the matter does not end here.

### IV

In addition to her theory of defective design, plaintiff sought to prove at trial

---

1. Plaintiff's cause of action for breach of warranty is not time-barred by the four-year contracts statute of limitations, which ran from the tender of delivery in 1944 or 1948; actions under Virginia law grounded in a personal injury-products liability factual pattern are governed by the torts statute, which runs from the time of injury. *See Tyler v. R.R. Street & Co.,* 322 F.Supp. 541, 543 (E.D.Va.1971).

2. In 1954, Avtex sold the lift truck in issue, and repurchased it in 1963. Thereafter, the truck was used continuously by Avtex until Bly's accident in 1979.

 Otis contends that this sale and repurchase should insulate it from liability for breach of warranty, because the truck was no longer "in the stream of commerce" initiated by the manufacturer. We find no merit to this argument, given that Virginia has expressly abolished any vertical privity requirement in actions for breach of warranty. *See* Va.Code § 8.2–318 (1965). If the defect existed at the time of sale, *see Logan v. Montgomery Ward & Co.,* 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975), and if the product was not substantially changed after the time of sale, *cf. Restatement (Second) of Torts* § 402A(1)(b) (1965), it is of no moment that the product has changed hands in the interval after leaving the manufacturer's control.

that Otis, and its corporate predecessor, had breached the warranty of merchantability by failing to warn of the hazards of operating the lift truck. She asserted that the machine should have been accompanied, when sold in 1944 and refitted in 1948, by instructions and warnings concerning its potential dangers.[3] Moreover, plaintiff introduced evidence that Otis had been notified in 1977 of a similar accident involving the same truck at the Avtex plant, in which an operator named Harry Wilson had been killed,[4] to demonstrate Otis's further obligation at that later date to warn Avtex about the lift truck.

The trial court charged the jury on plaintiff's theory that "in the original design in '44, '48, and after the learning of the '77 death of Wilson ... it was necessary that the defendant give a warning in order for the forklift not to be unreasonably dangerous or cause an unreasonable risk of injury to users of the lift." The court summarized the factual elements that could give rise to this putative duty to warn, and then observed: "It was not a continuing duty to warn. This duty ended in '44 and at the latest '48. However, you may find, provided the conditions for a requirement of such a warning existed, a renewal of that obligation after notice of the Wilson death."[5]

We disagree with the general contention advanced by Otis on appeal that the trial court, by instructing on the duty to warn, necessarily erred by injecting negligence principles into a case being tried solely on a theory of breach of warranty. A manufacturer or seller that fails to warn of the dangers of its products can be held liable, in appropriate circumstances, either on a theory of negligence, *see Featherall v. Firestone Tire & Rubber Co.,* 216 Va. 949, 961–64, 252 S.E.2d 358, 367 (1979); *Restatement (Second) of Torts* § 388 (1965), or on a theory of implied warranty, *see Reid v. Eckerds Drugs, Inc.,* 40 N.C.App. 476, 482–83, 253 S.E.2d 344, 348–49 (N.C.Ct.App.), *review denied,* 297 N.C. 612, 257 S.E.2d 219

**3.** At oral argument, for instance, counsel for plaintiff suggested that operators of the lift truck should have been instructed to face their torsos to the rear of the truck, operating the controls by reaching behind them.

**4.** More precisely, evidence introduced at trial indicated that Otis was notified in 1977 of a suit brought by Wilson's estate alleging, *inter alia,* that the shin-high platform guards on the lift truck were inadequate and defective, and had caused Wilson's death.

**5.** In total compass, the duty-to-warn charge, including that portion quoted by the dissent, was as follows:

> In addition to defective, unfit design, the plaintiff asserts that originally in '44 through '48, and again after the defendant was notified of the death of Wilson while Wilson was operating this forklift ... it was necessary that the defendant give a warning in order for the forklift not to be unreasonably dangerous or cause an unreasonable risk of injury to users of the lift.

> . . . . .

> Where, however, any such risk would be apparent to any person that the manufacturer reasonably should foresee might use the product there is no duty to warn.

> . . . . .

> The duty to warn if it existed was during the times, the years when the forklift was made available to Avtex. It was not a con-

tinuing duty to warn. This duty ended in '44 and at the latest '48. However, you may find provided the conditions for a requirement of such a warning existed, a renewal of that obligation after notice of the Wilson death.

In order to find an obligation to warn, however, you must first find that there was an unfit condition to warn about and that a warning was necessary to prevent the forklift from being unreasonably dangerous or subjecting its users to an unreasonable risk of injury.

You've heard evidence of the Wilson death and the Wilson lawsuit filed by his estate against this same defendant, the Otis Elevator Company. This testimony is solely for the purpose of showing that the defendant had notice of a possible defect in the design of the lift insofar as not having any waist-high guards and is to be considered by you in determining whether that notice renewed or gave rise to any obligation on the part of Otis to warn in order to fulfill its warranty obligation.

During its deliberations, the jury requested and was given supplemental instructions on the duty to warn. In these the court reiterated the substance of its prior instructions, including: "The duty to warn, if it existed, was during ... the forties, when the forklift was made available to Avtex. It was not a continuing duty thereafter. However, you may find, provided the conditions for the requirement of such a warning existed, a renewal of that obligation after the notice of the Wilson death."

(1979), or strict liability in tort,[6] *see Greiner v. Volkswagenwerk Aktiengeselleschaft,* 540 F.2d 85, 91 (3d Cir.1976); *Martinez v. Dixie Carriers, Inc.,* 529 F.2d 457, 465 (5th Cir.1976); *Jackson v. Coast Paint & Lacquer Co.,* 499 F.2d 809, 812 (9th Cir.1974); *Restatement (Second) of Torts* § 402A comments h, j (1965). A manufacturer may breach its implied warranty of merchantability by failing to warn or instruct concerning dangerous propensities or characteristics of a product even if that product is flawless in design and manufacture. *See Reid v. Eckerds Drugs, Inc.,* 40 N.C.App. at 482–83, 253 S.E.2d at 348–49; *cf. Davis v. Wyeth Laboratories,* 399 F.2d 121, 128 (9th Cir.1968) (failure to warn gives rise to strict liability in tort, even where no manufacturing or design flaw). In essence, the product is rendered "unreasonably dangerous" by the absence of proper warnings or instructions. *See Barber v. General Electric Co.,* 648 F.2d 1272, 1277 (10th Cir.1981); *Karjala v. Johns-Manville Products Corp.,* 523 F.2d 155, 158 · (8th Cir.1975); *Alman Brothers*

*Farms & Feed Mill, Inc. v. Diamond Laboratories, Inc.,* 437 F.2d 1295, 1303 (5th Cir. 1971).

This duty to warn under a theory of implied warranty or strict liability in tort is obviously similar, in many respects, to the manufacturer's duty to warn under a negligence theory.[7] But it differs in critical aspects important to the resolution of this appeal.

First, as the district court properly charged the jury, the duty to warn under an implied warranty theory focuses upon whether the lack of warning renders the product unreasonably dangerous; in contrast, a manufacturer will be liable in negligence for a failure to warn if its conduct is unreasonable.[8] *See Jackson v. Coast Paint & Lacquer Co.,* 499 F.2d 809, 812 (9th Cir. 1974); *Woodill v. Parke Davis & Co.,* 79 Ill.2d 26, 35, 37 Ill.Dec. 304, 308, 402 N.E.2d 194, 198 (1980); 2 L. Frumer & M. Friedman, *Products Liability* § 16A[4][f][vi] (1982).[9] Second, under a negligence theory

6. Virginia has not in terms adopted strict liability in tort, *see Restatement (Second) of Torts* § 402A (1965), as yet another and separate theory of products liability, but it is well established that warranty liability under Virginia law for personal injuries caused by defective products is the functional equivalent of strict tort under the *Restatement* formulation. *See Matthews v. Ford Motor Co.,* 479 F.2d 399, 401 n. 2 (4th Cir.1973); *Chestnut v. Ford Motor Co.,* 445 F.2d 967, 968 & n. 1 (4th Cir.1971); Speidel, *The Virginia "Anti-Privity" Statute: Strict Products Liability Under the Uniform Commercial Code,* 51 Va.L.Rev. 804, 822, 828–29 & n. 61 (1965). *See generally Basko v. Sterling Drug, Inc.,* 416 F.2d 417, 427–28 (2d Cir.1969); J. White & R. Summers, *Uniform Commercial Code* § 9–7, at 355–56 (2d ed. 1980). Accordingly, for purposes of analysis, we draw upon cases decided under the rubric of strict liability in tort to gauge the elements of Virginia's implied warranty of merchantability.

7. We disagree with plaintiff's contention that *Gardner v. Q.H.S., Inc.,* 448 F.2d 238 (4th Cir. 1971), equated negligence and implied warranty principles with respect to the duty to warn. After discussing the contours of a cause of action for negligent failure to warn, the court noted that "[t]he same is true with respect to a cause of action for breach of an implied warranty under the Uniform Commercial Code." *Id.* at 242. Contrary to plaintiff's suggestion, however, this reference was to the relaxation of privity requirements and the need to prove the

"inherent danger" of a product, not to the elements of the duty to warn. *Cf. id.* at 243 ("the separate theories of negligence and breach of warranty [for failure to provide adequate warning of hidden danger] are not always coextensive").

8. As many courts and commentators have noted, *see, e.g., Werner v. Upjohn Co.,* 628 F.2d 848, 858 (4th Cir.1980), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 862, 66 L.Ed.2d 804 (1981); *Chestnut v. Ford Motor Co.,* 445 F.2d 967, 968 & n. 1 (4th Cir.1971); Kidwell, *The Duty to Warn: A Description of the Model of Decision,* 53 Tex.L.Rev. 1375, 1377–78 (1975); Noel, *Products Defective Because of Inadequate Directions or Warnings,* 23 Sw.L.J. 256, 267 (1969), the scope of liability imposed under a breach-of-warranty theory in many if not most duty-to-warn cases will be identical to that imposed under a negligence theory. Yet there may well be instances in which a manufacturer has "reason to know" that its product is "likely to be dangerous"—triggering liability under the *Restatement (Second) of Torts* § 388 (1977)— but its failure to provide a warning does not render the product "unreasonably dangerous" under a theory of implied warranty or strict liability in tort.

9. *See also* Keeton, *Products Liability—Design Hazards and the Meaning of Defect,* 10 Cum.L. Rev. 293, 315 n. 87 (1979); Wade, *On Product "Design Defects" and Their Actionability,* 33 Vand.L.Rev. 551, 553 (1980).

the duty to warn is continuous and is not interrupted by manufacture or sale of the product, *see Large v. Bucyrus-Erie Co.*, 707 F.2d 94 (4th Cir.1983) (Winter, C.J., dissenting); W. Prosser, *Law of Torts* § 96, at 647 (4th ed. 1971), whereas the duty to warn under a theory of strict liability exists only at the time the product leaves the manufacturer's control, *see Barber v. General Electric Co.*, 648 F.2d 1272, 1277 (10th Cir.1981); *Logan v. Montgomery Ward & Co.*, 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975); 1 R. Hursh & H. Bailey, *American Law of Products Liability* § 4.13, at 674 (2d ed. 1974).[10] This distinction clearly reflects the emphasis in strict liability upon the danger of the product rather than the conduct of a manufacturer: if a product is not rendered unreasonably dangerous by the absence of warnings when it leaves the manufacturer's control, it cannot at some later date "become" unreasonably dangerous due to the lack of warnings.

 In light of this latter distinction, the trial court erred in instructing the jury that it could find a "renewal" of the duty to warn after Otis received notice in 1977 of the death of Wilson in circumstances similar to the accident suffered by plaintiff's decedent. Under the breach of warranty theory by which this case was submitted to the jury, the manufacturer's duty to warn, as relevant to determining whether the lift truck was "unreasonably dangerous" when manufactured and sold, could have arisen only in 1944 and 1948 when Baker Raulang had control over the truck. By instructing the jury that the duty to warn could be revived by subsequent notice of injuries, the district court introduced elements of a negligence cause of action for failure to warn not applicable where the controlling theory is breach of warranty. This instruction made possible a verdict based on an erroneous theory of liability. Accordingly, it fatally taints the general jury verdict, which cannot stand.

## V

For the foregoing reasons, the judgment of the district court is vacated, and the case remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.

BUTZNER, Senior Circuit Judge, dissenting:

I agree with the court's exposition of the law. I disagree about application of the law to the jury instructions.

The only proof of the forklift's unfitness was its defective design which made it unreasonably dangerous when the manufacturer sold it.

The court correctly told the jury that in order for the plaintiff to recover she had to show that the forklift was unfit when it was made available for the buyer's use in 1944 or 1948. The instructions explained that the word "unfit" meant "reasonably dangerous or a condition that subjects the users of the forklift to an unreasonable risk of injury." The court emphasized the importance of the time for determining whether the forklift was unfit by telling the jury that they should consider the state of technology and art on the subject "as it was in the years 1944 and at the latest '48 because they are the crucial years when this product was in the—last in the possession of the defendant."

The instructions on warning must be considered in the context of the entire charge. They cannot be divorced from the following paragraph of the charge:

In order to find an obligation to warn, however, you must first find that there was an unfit condition to warn about and that a warning was necessary to prevent the forklift from being unreasonably dangerous or subjecting its users to an unreasonable risk of injury.

Thus, the jury could not base its verdict solely on a lack of warning in 1977. Under the instructions of the court, the jury first had to find "an unfit condition to warn

---

**10.** *But see* Comment, *Products Liability: Post-Sale Warnings*, 1978 Ariz.St.L.J. 49, 62 (suggesting that seller may have duty to warn after sale under strict liability theory).

about." The only "unfit condition" was defective design which the court had told the jury must be determined by the state of the art in the 1940's.

Parenthetically, if the manufacturer had fulfilled its warranty by giving adequate warning when it sold the forklift in the 1940's, the court's instruction about warning in 1977 would have injected error in the case. But this is not the situation, for the evidence is undisputed that the manufacturer gave no warning when it sold the defectively designed machine.

In sum, considering the charge as a whole, I believe that the instructions about warning did not mislead the jury. In order for the plaintiff to prevail, the jury was required to find that the forklift was unfit when it left the manufacturer's hands. Because the evidence was sufficient to support such a finding, I would affirm the judgment entered on the verdict of the jury.