ESTATE OF Bernard C. KIMMEL, Plaintiff,

v.

CLARK EQUIPMENT CO., Defendant.

Nos. 90–0134–H, 89–0073–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Sept. 27, 1991.

Peter N. Munsing, Mayerson, Gerasimowicz & Munsing, Spring City, Pa., Mar-

tin J. McGetrick, Jr., Chandler, Franklin & O'Bryan, Charlottesville, Va., for plaintiff.

Michael T. Wharton, Wharton, Levin & Ehrmantraut, Annapolis, Md., Stanley V. Boychuck, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

B. WAUGH CRIGLER, United States Magistrate Judge.

On October 14, 1987, Bernard Kimmel, then 15 years old, was killed when a forklift he was operating on behalf of his employer overturned. Plaintiffs have brought these now consolidated actions to recover damages arising out of that death. The only remaining claims against the sole remaining defendant, Clark Equipment Company, sound in negligence and are set forth in Count I of plaintiffs' complaint. In that count plaintiffs contend that defendant was negligent in the design, fabrication, assembly, sale and supply of the forklift, that it negligently failed to warn foreseeable users of the dangers of its operation, and that it failed to continue to improve by retrofit the warnings, danger signs and design features of the equipment. In the last category, plaintiffs allege numerous particular ways defendant failed to provide post-sale information to potential users of the dangers of the vehicle and included an allegation of negligent failure to recall and retrofit the equipment with safety devices allegedly designed and made available after the initial sale to prevent the very kind of accident that occurred when plaintiffs' decedent was trapped between the overhead guard and the ground and killed.

While defendant addressed the warranty and strict liability counts of the complaint in a motion for partial summary judgement filed well in advance of trial, just prior to trial it now attacks the sufficiency of the retrofit and warning claims by objecting *in limine* to the introduction of certain post-sale but pre-accident task force investigation reports dealing, *inter alia*, with studies made of lateral overturn accidents and the propriety of operator restraints. Clark also has objected to plaintiffs' use of evidence of other accidents that post-dated the sale of the instant forklift in 1959 including evidence of accidents occurring after the date of the accident that killed the decedent. In addition, Clark has voiced objection to the court's granting any proffered jury instruction which would tell the jury that under Virginia law it had a duty to retrofit or a continuing duty to warn independent of any duty to do so at the time of manufacture/sale. In essence, Clark seeks to exclude consideration by the jury of any claim related to retrofitting or warnings, which relief it originally sought in the Rule 12(b) defenses set out in the answer to the complaint and which it could have pressed in its motion for summary judgment, but did not. Because failure of the court to address these issues even at this late hour could lead to fatal error in the record, the court is compelled to address them now.[1]

In its memorandum opinion of August 12, 1991, when it addressed the dispositive motions filed not only by Clark but also by Homestead, a co-defendant who had performed some repair work on the subject forklift, the court observed that plaintiffs had failed to apprise it of any authority in Virginia for the proposition that a manufacturer, where there is no statutory or regulatory direction to do so, has a duty to retrofit a product with safety devices that are determined appropriate because of information developed after the product has been manufactured and put in the stream of commerce. Plaintiffs still cite no authority for that proposition but argue that under the facts of this case it can be shown that Clark undertook a voluntary retrofit program in the 1980's and agreed to install safety belts on its forklifts manufactured during a 15 year period preceding the date the decision to retrofit was made. The model the decedent was operating fell outside the covered class of forklifts and the period subject to the retrofit program.

█ It is the opinion of this court that there is no duty to retrofit under Virginia

---

1. In essence, the court is treating, as renewed, Clark's motion to dismiss.

law.[2] This is a far cry, however, from saying that plaintiffs will not be allowed to show by appropriate evidence, *inter alia*, that the proper design of the machine should have included seat belts or restraints, that such were reasonably available or that the device was negligently manufactured and sold without such restraints attached. To the extent that they can lay a proper foundation for the introduction of post-manufacture/sale but pre-accident task force documents so that they reasonably can be said to relate to the duty of the manufacturer at the time the product was produced and put into the stream of commerce to exercise reasonable care in the design and manufacture, plaintiffs will not be prohibited *in limine* from attempting to do so. However, the court warns that the path to the introduction of such evidence is narrow and full of obstructions. This is so because if the only thing plaintiffs can show is that a hazard was discovered after it left Clark's hands, and that at such later time Clark became aware of matters that they should not or in the exercise of reasonable care would not have been aware of at the time the product left its hands, the evidence related to Clark's discovery of that information and its resultant retrofit program will not be relevant.

■ As to the warning claim, the court notes that in *Featherall v. Firestone*, 219 Va. 949, 252 S.E.2d 358 (1979) the Supreme Court of Virginia adopted § 388 of the Restatement (Second) of Torts (1965) which places upon a manufacturer of a chattel a duty to exercise reasonable care to warn foreseeable users of dangerous conditions or facts which are likely to make the product dangerous. The court recognized that the duty to warn is predicated upon the manufacturer's superior knowledge of the product, and the Virginia Supreme Court believed that the duty extended to all "persons who might in the ordinary and natural course of events be subjected to danger." 219 Va. at 962, 252 S.E.2d 358.

More importantly, the *Featherall* court articulated the nature and extent of this duty when it addressed plaintiff-appellant's claim against a defendant who supplied a component gas regulator, the proper operation of which was critical to the safety of the device that eventually exploded and injured the plaintiff. The court noted that plaintiff's evidence showed the accident was not caused in part by any defect in the design or construction of the regulator. It concluded as a matter of law on the evidence before it that the manufacturer was not negligent in failing to provide a device that would have prevented removal of an adjusting screw which, in turn, would have prevented the removal of a lock nut that led to the ultimate blow out. Nevertheless, the court held that the manufacturer could be found to have negligently failed to warn against the dangerous condition that existed by use of the device without the lock-nut.[3] Among the "important facts" seized upon by the court was that plaintiff "was not aware of the result created by the full depression of the adjusting screw used without a locknut." 219 Va. at 966, 252 S.E.2d 358. Under these circumstances, the court found that plaintiff had established a prima facie case of liability on the duty to warn claim.

The purpose of this analysis lies in the confusion that may have been brought about in Virginia law related to a manufacturer's duty to warn by the decision of the Fourth Circuit Court of Appeals in *Bly v. Otis Elevator Co.*, 713 F.2d 1040 (4th Cir. 1983).[4] Plaintiffs in this case rely upon

**2.** In the same opinion of August 12, 1991, the court was required to make a choice of applicable law in this diversity case. For the reasons set forth therein, it chose to apply the law of Virginia.

**3.** Interesting here also is the fact that the locknut was removed from the equipment, rendering it altered and thus torpedoing plaintiff's claim based on implied warranty. 219 Va. at 965, 252 S.E.2d 358.

**4.** Plaintiffs also rely on *Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274 (4th Cir.1987). This court is not entirely sure that the court dealt with the theory of negligent failure to warn as the case appears to have sounded entirely in contract. In any event, this court is convinced that the *Island Creek* did nothing inconsistent with current Virginia law.

*Bly* for the proposition that Virginia would recognize a continuous duty to warn that is independent of any duty that defendant otherwise might have had at the time the product was made and sold. Plaintiffs seek to hold defendant liable under this duty for its failure to warn of dangerous conditions even though such conditions may not have been considered dangerous at the time the equipment left Clark's hands. Plaintiffs argue that all post-sale and pre-incident evidence, including much of the task force information related to developments in the industry which seems to have precipitated Clark's retrofit program as well as evidence of other accidents involving Clark forklifts, would be admissible both as to liability and punitive damages. Plaintiffs apparently form that impression from the statement by the Court of Appeals that, under Virginia law, "the duty to warn is continuous and is not interrupted by manufacture or sale of the product ..." 713 F.2d at 1046.

■ This impression is misplaced. This court believes that while some of the Fourth Circuit's comparisons of the differences among the theories of strict tort, warranty and negligence law was gratuitous, that court held that an instruction about any renewal of a duty to warn, independent of a manufacturer's duty at the time of manufacture and sale, which may have been arisen because of discoveries or the development of other manufacture data subsequent to the time the machine left Clark's hands but before the accident giving rise to the litigation, would be reversible error. To put it another way, the *Bly* court provided no basis for a claim under Virginia law that the duty to warn is separate and independent from any duty to warn the manufacturer had at the time the product left its hands.

■ Though the duty to warn clearly is continuous from the date of manufacture/sale, it requires the manufacturer to warn only about dangerous conditions it knew about, or in the exercise of reasonable care should have known about, at that time. Restatement (Second) of Tort § 88 (1965). The duty does not require a manufacturer to warn about a dangerous condition that became reasonably recognizable or apparent only at some later period of time, after industry standards and other data caused the matter to be revisited in a new light. Such later acquired information would be relevant only if a proper foundation could be laid relating such information to the time the product left the manufacturer's hands. In essence, the court here does not read *Bly* to create a duty that otherwise did not exist under Virginia law. Therefore, to the extent that Clark moves to have the court dismiss plaintiffs' claim that it owed decedent a duty to warn that existed independent from the duty it owed at the time of manufacture and sale, and irrespective of whether the condition was recognizable at the time of such, its motion is well taken.

However, the court does not wish to be misunderstood. It holds here that no duty to warn arises simply because a manufacturer discovers new information about a product after the product already has left its hands. On the other hand, evidence is admissible to show that the information should or could have been known to a manufacturer exercising reasonable care at the time of the production and sale, and in that event, the later acquired information may be relevant, if for nothing else, but to show the recklessness of the manufacturer's decision to produce the equipment without adequate warning.

Therefore, plaintiffs should not be prevented *in limine* from introducing all post-sale but pre-incident evidence, provided they lay a proper foundation to show a relationship of any after developed evidence to the duty defendant had when it manufactured and sold the product. Otherwise, such evidence would not be relevant to a triable issue.[5]

An order will enter granting, in part, Clark's motion as it relates to whether Vir-

---

5. The parties agree that evidence concerning action Clark may have taken or accidents with Clark forklifts after October 14, 1987 would not be admissible as they post-date the accident that is the subject of this suit.

ginia law recognizes either a duty to retro-fit or a duty to warn that is separate and independent from the duty imposed upon the manufacturer at the time the product leaves its hands. The order, however, will deny, in part, the motion *in limine*, to the extent that post-sale but pre-accident evidence might be admissible upon the laying of a proper foundation.