Ann McALPIN, Administratix
for the Estate of David
McAlpin, Plaintiff,

v.

LEEDS & NORTHRUP CO.,
et al., Defendants.

Civil Action No. 95–0758–R.

United States District Court,
W.D. Virginia,
Roanoke Division.

Jan. 10, 1996.

Matthew W. Broughton, John Weber, III, Gentry, Locke, Rakes & Moore, Roanoke, VA, for Ann McAlpin.

Kenneth John Ries, Johnson, Ayers & Matthews, Roanoke, VA, for Leeds and Northrup.

James W. Morris, III, Morris and Morris, P.C., Richmond, VA, James W. Walker, Morris & Morris, Richmond, VA, for Fireye, Inc.

Stanley Paul Wellman, Elizabeth E.S. Skilling, Harman, Claytor, Corrigan & Wellman, Richmond, VA, for Electric Furnace Co.

Daniel Simpson Brown, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, David B. Hart, Wooten & Hart, Peter Duane Vieth,

**208**

Wooten & Hart, Roanoke, VA, for North American Manuf. Company.

Benjamin Sorrells Boyd, Piper & Marbury, Washington, DC, Raymond G. Mullady, Jr., Piper & Marbury, Baltimore, MD, for Partlow Corp., Danaher Corporation.

## MEMORANDUM OPINION

CONRAD, United States Magistrate Judge.

Plaintiff has brought this wrongful death action against seven corporations and/or companies for actions allegedly taken by them in connection with the manufacture or installation of components in an annealing oven which caused the demise of plaintiff. The complaint contains the following counts:

Count I: The defendants breached their express or implied warranties that the oven and/or its components were of merchantable quality and fit for their intended and ordinary use.

Count II: The defendants were negligent in designing, manufacturing, testing selling, calibrating and/or installing the oven, its safety valve, the temperature control and/or other component parts, and they failed to give appropriate warnings in connection with their products.

Count III: The defendants breached their duty to warn of dangers and/or hazards in connection with their products and of which they were aware.

Count IV: The defendants breached their duty to retrofit the oven and its component parts.

This court has diversity jurisdiction in this matter pursuant to 28 U.S.C. § 1332. The pretrial dispositive motions in this case are before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c).

Defendants Leeds & Northrup Co. ["Leeds"], North American Manuf. Co. ["North American"], General Signal Corp. ["General Signal"], The Partlow Corporation ["Partlow"] and The Danaher Corp. ["Danaher"] filed motions to dismiss.[1] The parties acknowledged at the hearing that these motions to dismiss should be restricted to Counts III and IV of the complaint, and therefore, the court will consider only those counts.[2] Moreover, the parties have agreed that the complaint should be dismissed with prejudice as against defendant Danaher. Accordingly, the court will dismiss all claims against Danaher.

■ A motion to dismiss under Fed. R.Civ.P. 12(b)(6) should not be granted unless it is clear as a matter of law that, after accepting the facts alleged in the complaint to be true and construing the allegations in the light most favorable to the plaintiff, the court could not grant relief under any set of facts that the petitioner could prove consistent with his allegations. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Revene v. Charles County Comm'rs,* 882 F.2d 870, 872 (4th Cir.1989).

The complaint contains the following factual allegations. On October 12, 1993, the decedent, David McAlpin, sustained a fatal injury when an annealing oven exploded at his place of employment, Walker Machine and Foundry Corporation ["Walker"]. Leeds and General Signal sold and calibrated a temperature controller on the oven; North American designed, manufactured and sold a main safety shut-off valve on the oven; and Partlow designed, manufactured and sold a temperature recorder and programmer on the oven.[3]

■ Defendant North American first argues that, even if it had a duty to retrofit or a post-sale duty to warn of defects under Virginia law, Ann McAlpin, as administratrix

---

1. Defendants Fireye, Inc. and The Electric Furnace Co. did not file dispositive motions.

2. By order dated December 12, 1995, The Honorable Jackson L. Kiser, Chief United States District Judge, dismissed all allegations contained in the complaint that sound in strict liability.

3. The allegations against Donaher and the defendants who have not filed dispositive motions have been excluded.

of the decedent's estate, was not a foreseeable user of the oven.[4] However, plaintiff argues persuasively that the administratrix of an estate steps into the shoes of the decedent when litigating on his behalf. *See, e.g., Payne v. Piedmont Aviation, Inc.,* 294 F.Supp. 216 (E.D.Va.1968). Therefore, the court will deny North American's motion to dismiss on this ground.

■ Relying primarily on *Estate of Kimmel v. Clark Equipment Co.,* 773 F.Supp. 828 (W.D.Va.1991), defendants next argue that Count III should be dismissed because there is no post-sale duty to warn in Virginia.[5] In *Kimmel,* the plaintiff claimed that the manufacturer of a forklift "failed to provide post-sale information to potential users of the dangers of [a] vehicle," which failure led to the demise of decedent. 773 F.Supp. at 829. Narrowly construing *Bly v. Otis Elevator Co.,* 713 F.2d 1040 (4th Cir.1983), the court in *Kimmel* held that, although the duty to warn is continuous from the date of the manufacture or sale of a product, the duty only requires the manufacturer to warn of dangerous conditions of which it knew or, in the exercise of reasonable care, should have known about at the time the product left its hands. *Kimmel, supra,* at 831. According to the court in *Kimmel,* information acquired after the sale or manufacture of a product is only relevant to demonstrate what the manufacturer should have known, or, in fact, did know, at the time of sale. *Id.* The court opined that any other interpretation of *Bly* would "create a duty that otherwise [does] not exist under Virginia law." *Id.*

In *Bly,* the decedent, Wayne Bly, was injured while operating a lift truck in the course of his employment. 713 F.2d at 1042. Plaintiff, the administratrix for decedent's estate, alleged, *inter alia,* that the defendant breached its implied warranty of merchantability by failing to warn Bly, as a foreseeable user of the product, that the shin-high guards on the lift truck were inadequate to

protect the operator in rear-end collisions. *Id.* at 1043–44. Although the lift truck had been sold in 1944 and refitted in 1948, the defendant manufacturer, by way of a reported accident similar to the one in which Bly had been involved, learned in 1977 of the dangers associated with rear-end collisions but failed to warn Bly of these dangers. *Id.* at 1044. The trial court instructed the jury that the manufacturer's duty to warn ceased, at the latest, in 1948 but that the jury could find a renewal of this duty upon the manufacturer's learning of additional hazards in 1977. *Id.*

In reviewing the appropriateness of this instruction, the Court of Appeals for the Fourth Circuit distinguished between the duty to warn under a theory of implied warranty and the duty to warn under a theory of negligence. *Id.* at 1045. The Court noted that, under a theory of implied warranty, the focus is on whether a lack of warning renders the product unreasonably dangerous and that, under a theory of negligence, the focus is on whether the manufacturer's failure to warn was unreasonable. *Id.* The Court also stated that, under a theory of negligence, the duty to warn is continuous and is not interrupted by manufacture or sale of the product. *Id.* at 1045–46, *citing Large v. Bucyrus–Erie Co.,* 707 F.2d 94 (4th Cir.1983). The Court went on to hold, however, that no duty to warn extends beyond the sale or manufacture of a product when the theory is breach of warranty. *Id.* at 1046. The Court indicated that, when the focus of a theory of liability is on a product itself, the conduct of the manufacturer after the product leaves its hands is irrelevant. *Id.* Therefore, the Court found the trial court's instruction regarding the renewal of a duty to warn under a theory of implied warranty to be improper because it injected elements of a negligence cause of action. *Id.*

Although the language regarding a post-sale duty to warn in *Bly* is arguably dicta

---

4. Unless otherwise noted, the defendants' arguments and reasons for dismissal are substantially the same.

5. At oral argument on the motion to dismiss, defendants also suggested that plaintiff's duty to warn claim is so vague and loosely worded as to

provide insufficient notice of any viable basis for recovery. The court agrees that plaintiff has not alleged any facts which would support any duty to warn. In its opinion, the court will only undertake to determine whether, as a matter of law, Virginia recognizes a post-sale duty to warn.

because the Court of Appeals reviewed the challenged instruction only under a theory of implied warranty, this court feels bound by that court's reasoning with respect to whether the duty to warn is a continuing one under a theory of negligence.[6] Clearly, the Court's decision in *Bly* hinged on the distinction between the two theories of liability. In fact, the Court stressed that there is no duty to warn under a theory of implied warranty because the focus of that theory is on the product itself at the time it leaves the manufacturer's hand, not on the manufacturer, as is the case under a theory of negligence. This language does not support the argument that this court must look only to the information available to the manufacturer when the product left its hands if the theory under which the plaintiff has sued is negligence. To the contrary, this language indicates that such a focus should be utilized only if the governing theory is implied warranty.

Perhaps even more persuasively, the Court of Appeals for the Fourth Circuit has held on another occasion that the "ends of justice" require a manufacturer to notify buyers of defects which were apparently discovered after the sale of the product. Specifically, in *Island Creek Coal Company v. Lake Shore, Inc.*, 832 F.2d 274, 280 (4th Cir, 1987), the Court held that "if the defendant discovered that the machine it *had sold* to the plaintiffs was not safe, it had a duty to notify the plaintiffs and a failure to do so would be actionable negligence (emphasis added)." Although from the opinion in *Island Creek* the exact circumstances of the case are not clear, the court's use of the past perfect tense (i.e. "had sold") tends to indicate that the defects at issue were discovered only after the sale of the product. Moreover, in reaching this conclusion, the court cites *Smith v. FMC Corp.*, 754 F.2d 873 (10th Cir.1985), which clearly holds that there is a post-sale duty to warn: "[A] manufacturer has a responsibility to warn of a defective product at any time after it is manufactured

and sold if the manufacturer becomes aware of the defect." In view of *Island Creek* and *Bly*, therefore, this court concludes that the Court of Appeals for the Fourth Circuit recognizes a duty to warn under a theory of negligence in Virginia.[7]

Furthermore, there is nothing in the case law of Virginia to indicate that a manufacturer should be relieved of liability for failure to warn under a theory of negligence if it learns of a potential danger to a buyer only after the product has left the manufacturer's hands. In fact, as far as this court can discover, the Virginia Supreme Court has not addressed this specific issue. Indeed, prior to the holding in *Kimmel, Michie's Jurisprudence of Virginia and West Virginia [Michie's]*, cited *Bly* in concluding that a manufacturer in Virginia is under a continuing duty to warn of defects which is not interrupted by sale of the product. 13B *Michie's* § 14 at 270.

The opinion in *Featherall v. Firestone Tire and Rubber Co.*, 219 Va. 949, 252 S.E.2d 358 (1979), the case upon which the opinion in *Kimmel* appears to rely, 773 F.Supp. at 830, is consistent with *Michie's* interpretation of Virginia law. In *Featherall*, the Virginia Supreme Court adopted § 388 of the Second Restatement of Torts as the appropriate measure of a claim involving a failure to warn. Under § 388, a manufacturer of a chattel will be liable if:

a) he knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous. 252 S.E.2d at 366.

This language lends no support to the conclusion that Virginia would limit any post-sale duty to warn to defects of which the manu-

---

6. The amended complaint asserts liability under at least a theory of negligence, if not also under a theory of implied warranty.

7. The court notes that it has received the submitted copies of additional unpublished decisions

from the Court of Appeals for the Fourth Circuit which deal with this issue of a post-sale duty to warn. However, it is bound by Fourth Circuit rules not to rely on these decisions except under circumstances not present here.

facturer knew, or should have known, at the time of the sale. There is no indication in *Featherall* or § 388 that the timing of the defect's discovery has any dispositive effect on liability under a theory of negligence.[8]

In addition, other Virginia cases appear to assume the relevance of similar accidents in determining whether a manufacturer should be liable under a duty to warn. For example, *Ford Motor Company v. Phelps*, 239 Va. 272, 389 S.E.2d 454 (1990), and *General Motors Corp. v. Lupica*, 237 Va. 516, 379 S.E.2d 311 (1989), both review the admissibility of similar accidents in products liability cases without reference to whether these accidents occurred prior to the sale of the product or after the sale of the product. In both of these cases, the Virginia Supreme Court discusses at length whether accidents in vehicles similar to the one driven by the plaintiff could be introduced to show the manufacturer's notice and actual knowledge of a particular defect in one of its automobiles. The timing of the accidents does not appear to be a factor in the court's decision in either case. Although the absence of any discussion of this factor may be attributable to the particular circumstances of the two cases or the parties' respective arguments, this court is of the opinion that the utter lack of any discussion of this factor in two cases which involve large automobile manufacturers whose accident history would presumably have spanned a broad period of time tends to show that Virginia does not consider timing in relation to the sale of the product to be a dispositive factor.

Finally, this court is of the opinion that the extension of the duty to warn beyond the sale of the product is more in accord with the statement of the Virginia Supreme Court in *Featherall* that the duty is predicated on the superior knowledge of the manufacturer. 252 S.E.2d at 366. A post-sale duty to warn promotes a continuous flow of information from the more knowledgeable manufacturer to the industrial purchaser and all foreseeable users. Such a flow of information prevents injuries caused by limited knowledge of products, and the duty to convey this information provides the manufacturer even more encouragement to monitor closely the accident history of its products, thereby fostering speedier improvements in the relevant industry. Absent a post-sale duty to warn, a manufacturer could learn of defects in its product that only manifest themselves in unusual circumstances and take no affirmative action whatsoever, with the hope that such a latent defect will not lead to litigation. Yet, these latent defects are the least likely to be discovered by the purchasers prior to the occurrence of injuries.

Furthermore, a post-sale duty to warn also provides an avenue by which a manufacturer may mitigate against future liability. Assuming there were no post-sale duty to warn, a manufacturer still could conceivably be held liable for any future injury caused by the defect under a theory of negligent design or breach of the implied warranty of merchantability. Warning the product's previous purchasers of the defect would reduce, if not eliminate, any liability for subsequent injuries caused by the defect. Moreover, the manufacturer would not be held liable for its failure to warn previous purchasers unless such failure was unreasonable. The court, therefore, finds that policy considerations weigh heavily in favor of imposing a post-sale duty to warn on manufacturers.[9]

In summary, the court finds nothing in Virginia law to indicate that a manufactur-

---

8. While it may be true that, under the standard outlined in *Featherall* and § 388, the timing of the discovery of the defect may weigh against a finding of negligence for a failure to warn, the issue as to whether the evidence weighs in favor of one party or the other is not presently before the court.

9. The court's opinion should not be read so as to suggest that the duty to warn, and attendant policy considerations, are so broad as to mandate warnings to previous purchasers upon a mere change in industry or government stan-

dards. Instead, the court refers to defects which, although they were not discovered by use of due care and diligence before the sale of the product, nevertheless render the product unsafe in some not readily discernible fashion. In order for a manufacturer to be held liable for failure to warn of a defect discovered post-sale, its conduct must be negligent. The court is of the opinion that a manufacturer could seldom, if ever, be found negligent for having failed to inform a foreseeable user of changes in industry or government standards.

er's duty to warn under a theory of negligence is abrogated upon the sale of the product even under circumstances in which the manufacturer practiced due care in discovering defects prior to the sale. In any event, even assuming that this court were to interpret Virginia law otherwise, it concludes that it is bound by the Fourth Circuit's reasoning in *Bly* and *Island Creek* to hold that there is a post-sale duty to warn under a theory of negligence.[10] Although the court recognizes that the issue is by no means settled in Virginia, the court finds that the weight of authority mandates a finding that there is a post-sale duty to warn. Accordingly, the court must deny defendants' motions to dismiss Count III.

■ Defendants next argue that Count IV should be dismissed because there is no duty to retrofit under Virginia law. The court agrees. A review of Virginia law discloses no creation of any such duty, nor does the Fourth Circuit appear to have addressed the issue in a published opinion when interpreting Virginia law. In addition, *Buettner v. Super Laundry Machinery*, 857 F.Supp. 471 (E.D.Va.1994), *aff'd*, 47 F.3d 116 (4th Cir, 1995), *Butler v. Navistar Int'l Trans. Corp.*, 809 F.Supp. 1202 (W.D.Va.1991), and *Kimmel, supra*, all hold that there is no duty to retrofit in Virginia. Accordingly, the present court must grant the defendants' motion to dismiss as to Count IV.

For reasons stated, the court will grant defendants' motion to dismiss as to Count IV but deny it as to Count III. Those defendants who have not yet filed answers are directed to do so within 30 days. The clerk of the Court is directed to send certified copies of this Memorandum Opinion and accompanying Order to counsel of record for all parties.

### ORDER

In accordance with the written Memorandum Opinion entered this day, it is hereby ADJUDGED and ORDERED as follows:

1) that the Motion to Dismiss filed on behalf of defendants Leeds, North American, General Signal and Partlow be and hereby is DENIED as to Count III of the complaint;

2) that the defendants' Motion to Dismiss be and hereby is GRANTED as to Count IV of the complaint;

3) that all claims against defendant Danaher be and hereby are DISMISSED WITH PREJUDICE. This defendant is stricken from the case;

4) that defendant Danaher's Motion to Dismiss is now MOOT.

---

10. The court also notes that the issue of whether Walker was a knowledgeable industrial purchaser, *see Goodbar v. Whitehead*, 591 F.Supp. 552 (W.D.Va.1984), is an inappropriate consideration on a motion to dismiss.