# CIRCUIT COURT OF THE CITY OF NORFOLK

Jordan Hart et al.

v.

Anthony W. Savage et al.

## Case No. (Law) L04-1663

BY JUDGE EVERETT A. MARTIN, JR.

June 7, 2006

The infant plaintiff suffered injuries on August 13, 2002, while removing an orthodontic device her dentists prescribed for her. At the time of her injury, she was more than eight years of age. Her next friend filed the motion for judgment on July 29, 2004, naming as defendants Dr. Anthony W. Savage and Drs. Savage, Sabol & Visser, Ltd. (the "corporation"), the corporation employing Dr. Savage. The motion for judgment did not name Drs. Sabol or Visser as defendants. Service was requested on January 18, 2005, and effected on Dr. Savage on February 15 and on the corporation on February 21.

The plaintiff was seen by each of the three dentists at some time, but the motion for judgment alleges that only Dr. Savage breached the standard of care. Through discovery, it has apparently been learned that Dr. Sabol fit the plaintiff with the orthodontic device in question and gave her whatever instruction she received about its use. The plaintiff now seeks leave to file an amended complaint. The amended complaint would name Drs. Sabol and

Visser as additional defendants, allege breaches of the standards of care by all three dentists, and also allege additional breaches of the standard of care. I deny the motion.

The statute upon which both counsel rely for the resolution of the motion is Code of Virginia § 8.01-6. The claim asserted in the amended pleading clearly arises out of the same conduct or occurrence set forth in the motion for judgment. I need not decide whether the statute allows a plaintiff to add a party as opposed to changing a party. Nor need I decide whether the amended complaint would meet the requirements of the statute's third and fourth clauses. I need not decide these questions because the second clause of the statute plainly is not satisfied.

As exhibits to her brief the plaintiff attaches copies of correspondence and excerpts from depositions to establish that Drs. Savage, Sabol, and Visser, their corporation, and their malpractice insurer knew within the prescribed limitations period that a claim of malpractice was being investigated by her counsel and that an action was *threatened*; however, there is nothing to show that Drs. Sabol or Visser or the agent of either "received notice of the institution of the action" within the prescribed limitations period. The cover letter addressed to the Clerk of this Court dated July 27, 2004, which was sent with the motion for judgment, does not show copies sent to anyone other than co-counsel for the plaintiff. A civil action is "instituted" by filing a complaint (formerly a motion for judgment) in the Clerk's Office. Rule 3:2(a) (former Rule 3:3 (a)); *Nguyen* v. *Long*, 60 Va. Cir. 168 (2002); *Mokhiber* v. *Giant Food, Inc.*, 24 Va. Cir. 61 (1991). Letters to defendants and their insurers threatening suit and proposing a settlement do not suffice.

October 19, 2006

This dental malpractice-products liability action is before the court on the plaintiffs' motion to amend the amended complaint and a motion and demurrers filed by recently added defendant and third-party defendant 3M Unitek Corporation ("3M"), the manufacturer of one of the components used in the orthodontic headgear that caused the young plaintiff's injuries.

*Demurrer to American Orthodontics Corporation's*
*Amended Third-Party Complaint*

At the hearing, Mr. Spahn conceded American Orthodontics Corporation (AOC) would have a right to attorney's fees under indemnity and Mr. Littel conceded AOC would have no right to attorney's fees under contribution.

*Demurrer to the Plaintiffs' Amended Complaint*

Two of the demurrers went to issues the plaintiffs concede they are not raising, and, thus, I need not rule on them. These are fraud (paragraphs 36f and 68) and breach of express warranty (paragraphs 49 and 51).

*Negligence Per Se*

In paragraph 38 of the amended complaint the plaintiff alleges 3M "negligently and carelessly violated the laws and regulations of the United States, as well as regulations [sic], and these violations constitute negligence *per se*." 3M complains that the plaintiff has failed to designate the specific statutes or regulations violated. I sustain the demurrer. Although "an allegation of negligence ... is sufficient without specifying the particulars of the negligence," Rule 3:18(b), the "laws and regulations of the United States" fill probably two 8 foot by 4 foot book shelves (a half a cord of law) and it only seems reasonable to require the plaintiffs to tell the defendant specifically what statute or regulation it has violated.

*"Otherwise Negligent"*

The plaintiffs allege in paragraph 36h that 3M Unitek "was otherwise careless and negligent." This statement follows six specific allegations of negligence in paragraphs 36a-f. (There is no paragraph 36g.) As stated above, Rule 3:18(b) only requires that negligence be alleged without specifying the particulars. However, when the plaintiffs have alleged many specifics and seek $10,000,000 in damages, they ought to be required to allege their specifics. If the plaintiffs do not do so in the second amended complaint, any affected defendant will be granted a bill of particulars if requested.

*The Virginia Consumer Protection Act*

Mr. Leighton conceded at the hearing that the device at issue is a prescription medical device regulated by the Food and Drug Administration. *See* 21 C.F.R. § 872.5500. Thus the sale of such a device is authorized by federal regulation and exempt from the Virginia Consumer Protection Act. Code of Virginia § 59.1-199(A). I sustain the demurrer to Count VIII of the amended complaint without leave to amend, and I need not decide whether damages for personal injury may be recovered under the act. If required to decide the issue anew, I might reach a different conclusion from that expressed earlier.

## The Learned Intermediary Doctrine

The Supreme Court of Virginia has never explicitly adopted this doctrine, but it seems to have approved it with regard to prescription drugs in *Pfizer, Inc. v. Jones*, 221 Va. 681, 684, 272 S.E.2d. 43, 44 (1980). The Fourth Circuit in applying Virginia law has applied the doctrine in cases involving medical devices. *Talley* v. *Danek Medical, Inc.*, 179 F.3d 154 (4th Cir. 1999). The plaintiffs apparently concede this is Virginia law, but contend the issue ought not be decided on demurrer.

The Fourth Circuit succinctly stated the doctrine in *Talley*:

> in circumstances where (1) ... medical devices that can be prescribed or installed only by a physician are involved and (2) a physician ... installs the medical device after having evaluated the patient, the manufacturer of the ... device owes the patient only the duty to warn the physician and to provide the physician with adequate product instructions.

179 F.3d at 163. Thus 3M would owe no duty to the plaintiffs to warn them directly. However, there is one condition to the application of the doctrine. The physician "must be an intervening and independent party between patient and manufacturer," and this is apparently a question of fact. *Ibid*. Thus I overrule the demurrer to paragraphs 36c and e, 68, and 69 of the amended complaint.

## The Sophisticated User Defense

This was raised in the demurrer, Count IV, paragraph 2, and Count X, paragraph 2, but not addressed in the brief. I assume it has been withdrawn.

## Duty of Market Surveillance after Sale

I am aware of no duty of a seller at common law to conduct "post-sale market surveillance," and the plaintiff cited no authority to support the existence of this duty. I sustain the demurrer to paragraph 36d to the extent it alleges such a duty.

*Duty to Warn after Sale*

The Supreme Court of Virginia has not ruled on the existence of such a duty. Nothing in *Featherall* v. *Firestone Tire & Rubber Co.*, 219 Va. 949, 252 S.E.2d 358 (1979), or *Harris* v. *T.I.*, *Inc.*, 243 Va. 63, 413 S.E.2d 605 (1992), compels either conclusion. No published circuit court opinion I could find addresses the issue.

The origin of the duty in Virginia law was an opinion by Judge Winter concurring in part and dissenting in part in *Large* v. *Bucyrus-Erie Co.*, 707 F.2d 94, 99 (4th Cir. 1983). The issue there, however, was the date on which the statute of limitations began to run on the plaintiff's cause of action. Judge Winter's opinion was cited as the authority for the existence of the duty in negligence cases in *Bly* v. *Otis Elevator Co.*, 713 F.2d 1040 (4th Cir. 1983). However, the issue in *Bly* was an erroneous jury instruction regarding a manufacturer's duty to warn under a warranty of merchantability. Thus the statement about a duty to warn after sale in negligence cases was *dictum*.

In the other decision of the Fourth Circuit on the issue, *Island Creek Coal Co.*, v. *Lake Shore, Inc.*, 832 F.2d 274 (4th Cir. 1987), the Court discussed the duty in deciding whether the district court had abused its discretion in denying the plaintiff leave to amend its complaint under the "ends of justice" rule. 832 F.2d at 280. Given this pedigree, it is not surprising that the judges of the Western District of Virginia cannot agree about the existence of the duty under Virginia law. In *McAlpin* v. *Leeds & Northrup Co.*, 912 F. Supp. 207 (W.D. Va. 1996), a magistrate found the duty to exist. However, in *Ambrose* v. *Southworth Products Corp.*, 953 F. Supp. 728 (W.D. Va. 1997), a U.S. district judge found no such duty in Virginia law. In *Kimmel* v. *Clark Equipment Co.*, 773 F. Supp. 828 (W.D. Va. 1991), a magistrate found a limited duty to warn.

Professor Prosser unequivocally held such a duty exists. *Law of Torts*, § 96, p. 645 (4th ed. 1971). However, the law does not appear to be so certain. It appears the Supreme Court of Michigan, first created the duty in *Comstock* v. *General Motors Corp.*, 358 Mich. 163, 99 N.W.2d 627(1959). In the next twenty-five years, a few other courts adopted it. An increasing number of courts have adopted it in the last twenty years and, contrary to 3M's assertion in its brief, it appears the majority of the courts that have considered the issue have imposed such a duty. See *Restatement* (*Third*) *of Torts*: *Products Liability* § 10 (1998); *Products Liability* § 12.08 (Matthew Bender 2006). However, the circumstances and conditions under which different courts have

imposed the duty differ greatly, and the editors of the *Restatement* observed "an unbounded post-sale duty to warn would impose unacceptable burdens on product sellers." *Restatement, supra,* Comment a.

Although the law of torts has developed primarily through the common law, I believe a circuit court judge should make policy only interstitially, if at all. If such a broad duty is to be created in Virginia, it ought to be by the General Assembly, where all interested persons have an opportunity to be heard in the drafting of legislation, or by the Supreme Court, where interested non-parties may at least file briefs *amici curiae.* Rule 5:30. I decline to adopt a post-sale duty to warn, and I sustain 3M's demurrer to paragraph 63b.

### *Motion to Amend the Amended Complaint*

It appears the plaintiffs named the wrong doctor in their motion for judgment. They then sought leave to amend to name the proper doctors as defendants, but I denied the motion as the statute of limitations had expired as to those doctors. I found Code of Virginia § 8.01-6 did not apply.

The plaintiffs then filed an amended complaint bringing 3M into the case as a defendant. The plaintiffs now seek leave to file a second amended complaint alleging acts of negligence by the other doctors without making them parties. They wish to do this to save their *respondeat superior* claim against the doctors' corporation. This issue is governed by Code of Virginia § 8.01-6.1.

I ruled in my letter of June 7, 2006, that the claim asserted in the previously rejected amended pleading (that is, the one attempting to make the other doctors defendants) arose out of the conduct, transaction, or occurrence set forth in the original pleading. After reading the dental malpractice defendants' brief in opposition and considering Mr. McFadden's arguments, I do not believe the corporate defendant has shown any substantial prejudice from the proposed amendment. The plaintiffs only allege that Drs. Sabol and Visser committed the acts previously attributed to Dr. Savage. All three doctors have been deposed and are available to testify at trial; no witnesses to Drs. Sabol's and Dr. Visser's acts (as distinct from those of Dr. Savage) have disappeared in the interim; no records have been lost or destroyed. There has been no claim that the corporate defendant has in any way changed its position because the acts were originally attributed only to Dr. Savage. The claim of prejudice is speculative.

This leaves the diligence of the plaintiffs in asserting the amended claim. The infant plaintiff was injured on August 13, 2002. This action was filed on July 29, 2004, about two weeks before the statute of limitations would expire. Service was effected in February 2005.

The plaintiffs had the infant plaintiff's treatment record when they filed the action. *See* motion for judgment, paragraph 9. I do not know if it was legible. In answers to interrogatories on September 14, 2005, the defendants identified Dr. Sabol and Terri Fernheimer as the only individuals involved in the infant plaintiff's treatment in the sixty days before August 18, 2002. The plaintiffs deposed Dr. Sabol on September 22, 2005, and he admitted he fit the infant plaintiff with the headgear.

The plaintiff deposed Dr. Savage on October 7, 2005, and he testified he did not give the headgear to the infant plaintiff. Dr. Visser testified at his deposition on December 7, 2005, that he last saw the child on February 28, 2002. Terri Fernheimer testified at her deposition of December 7, 2005, that Dr. Sabol treated the child on August 13, 2002.

Counsel for the plaintiffs should have been aware on September 14, 2005, that they had perhaps named the wrong doctor as a defendant. Any doubts were eliminated by December 7, 2005. On February 23, 2006, the plaintiffs filed a motion to amend to add Drs. Sabol and Visser as defendants. The motion was argued on May 8 and denied on June 7. The plaintiffs thereafter filed the present motion to amend on July 24.

If one looks at only the time between the injury and the filing of the present motion to amend – almost four years – one would say there has not been reasonable diligence. However, plaintiff's counsel in suits such as these ought not be penalized for trying to conduct as much investigation as possible without discovery or for attempting to settle the claim before the doctors are served and the costs of litigation escalate. Seven months passed between service and the deposition of the first doctor; less than ten months passed until the depositions of all the doctors were concluded. This is not inordinate in medical malpractice cases. Less than three months after the conclusion of the depositions, the plaintiffs attempted to add the other two doctors as defendants, and, less than two months after I denied that motion, they filed the present motion to amend.

I find, under all the circumstances, that the plaintiffs' counsel has exercised reasonable diligence. I do, however, agree with Mr. McFadden's argument that, given the pending trial date and the extensive discovery thus far conducted, the plaintiffs ought not to be able to claim, as they do in paragraph 20, breaches of the standard of care by "other health care providers" or a failure "to provide other appropriate dental/orthodontic care and treatment … which will be determined and clarified during the course of further investigation and/or discovery."

48

I shall allow the plaintiffs twenty-one days to file a second amended complaint. It shall conform to the rulings stated in this letter. No new defendants or new claims shall be added.

### Motion to Strike

I defer ruling on the motion to strike for the reasons set for below. However, 3M will not be involved in any trial that may begin on January 29, 2007.

### Separate Trials

I believe separate trials on dental malpractice and products liability would be beneficial for several reasons. If both matters are tried together there is a greater likelihood of jury fatigue, confusion, and prejudice. One trial would probably last at least the presently scheduled seven days. A separate medical malpractice trial could probably be concluded in three days. Evidence of the standard of care and the habits of the doctors, so important in malpractice cases, would be irrelevant in a products liability case. Evidence of defects in the design of the device and of notice to the manufacturer of similar injuries, highly relevant in a products liability suit, would be irrelevant in a medical malpractice case and highly prejudicial to the medical malpractice defendants, notwithstanding the limiting instructions that would have to be given.

Each defendant's attorneys' fees would almost certainly be reduced in separate trials. If only one trial is held, the malpractice defendants' attorneys will have to participate in a repetition of depositions previously taken and other discovery Mr. Spahn will conduct. The plaintiffs' expenses would be greater in separate trials, but I expect plaintiffs' counsel is on a contingent fee. The scheduling of the testimony of expert witnesses would be simpler in separate trials. Indemnity and contribution issues would not arise in a separate medical malpractice trial.

Furthermore, if separate trials are held, the dental malpractice trial could be conducted at the presently scheduled date, January 29, 2007. If only one trial is held, the case will have to be continued and, given the number of lawyers involved, the continuance will probably be lengthy. It is regrettable to say, but litigation is a cost of doing business for many large corporations. For small businesses and professionals, it is an annoyance and distraction, and, for doctors, a claim of malpractice is of great concern. Litigation also causes

anxiety for many plaintiffs. By January 29, 2007, this case will have been pending against the malpractice defendants for almost two years since service. It is time to resolve those claims.

Before ordering separate trials, I am certainly willing to consider any specific problems counsel foresee with respect to damages, contribution, and indemnity should the plaintiffs recover in both trials.