**Gary Moore AMBROSE, Plaintiff,**

v.

**SOUTHWORTH PRODUCTS CORP., Defendant.**

**Civil Action No. 95–0048–H.**

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 30, 1997.

Roger Allen Ritchie, Terry L. Armentrout, Roger Ritchie & Associates, Harrisonburg, VA, for plaintiff.

Marshall M. Slayton, Clarence Lamar Garren, Martin & Raynor, P.C., Charlottesville, VA, for intervenor-plaintiff.

Robert Craig Wood, Leon F. Szeptycki, J. Brian Jackson, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for defendant.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Plaintiff Ambrose is an employee of Perdue Farms ("Perdue"). Plaintiff was seriously injured in an accident involving an Eagle vertical reciprocating conveyor ("VRC") that was manufactured by Raynor Corp., a subcontractor of Southworth Inc. ("SI"). A VRC is a type of industrial elevator. Perdue purchased the VRC from SI in summer of 1986, but by the time that Perdue took delivery of the elevator, SI had divided and transferred its assets among four corporations, including defendant Southworth Products Corp. ("SPC").[1] SI continued to administer its subsidiaries, but SI eventually dissolved in October 1987. SPC completed the installation and servicing of the VRC. Plaintiff alleges that SI's negligence caused plaintiff's accident and that SPC is liable as SI's successor.

Currently before the court are plaintiff's motion to amend his complaint and both parties' motions for summary judgment. In addition, defendant has filed a "Motion to Strike Plaintiff's Supplemental Brief in Support of His Objections to the Magistrate's Order Denying Plaintiff's Motion to Amend or, in the Alternative, for Leave to Reply to Plaintiff's Supplemental Brief."

By order dated October 8, 1996, the Honorable B. Waugh Crigler, United States Magistrate Judge, denied plaintiff's motion to amend, a decision that he refused to reconsider by order of November 26, 1996. Plaintiff appeals from this decision pursuant to Rule 72(a) of the Federal Rules of Civil Procedure. Similarly, the Magistrate Judge issued proposed findings of fact and a recommended disposition in connection with the parties' motions for summary judgment. In the October 8, 1996 report, the Magistrate Judge recommends that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted in part and denied in part. Both parties have filed objections to the Magistrate Judge's recommendations. The court will address separately each of the parties' motions.

### I. Motion to Strike

■ Defendant argues that plaintiff improperly filed a supplemental brief setting

---

1. SPC originally was incorporated as Zy–Ax Materials Handling Corp.

out new objections to the Magistrate Judge's order denying plaintiff's motion to amend that is currently before the court. In support of its motion, defendant explains that after plaintiff filed his objections to the Magistrate Judge's order, plaintiff then filed a November 18, 1996 "Response to Defendant's Objections on Motion to Amend." Defendant contends this response was improper because defendant never filed any objections to the Magistrate Judge's ruling, and thus all of the arguments contained therein are supplemental and prejudicial to defendant.

A review of the record clearly demonstrates that although plaintiff's November 18 response is misnamed, it is not improper. Plaintiff's response is more accurately characterized as a reply brief because it addresses the arguments made by defendant in response to *plaintiff's* objections. Particularly in the context of plaintiff's motion to amend, a reply brief is warranted to the extent that it addresses defendant's response.[2] As such, defendant's motion to strike will be denied. In addition, defendant's request, in the alternative, for leave to respond to plaintiff's brief will be denied because the court has received more than sufficient briefing on the issue of plaintiff's motion to amend, and further briefing will be needlessly cumulative. This court will rule on plaintiff's motion to amend on the basis of the papers and arguments currently before the court.

## II.   *Motion to Amend*

█   A magistrate judge's ruling on a motion to amend is a nondispositive motion to be reversed only upon a showing that the order is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); *Pagano v. Frank,* 983 F.2d 343, 346 (1st Cir.1993); *Young v. James,* 168 F.R.D. 24, 26 (E.D.Va. 1996). In the instant case, the Magistrate

Judge denied plaintiff's motion to amend as futile, citing *Estate of Kimmel v. Clark Equipment Co.,* 773 F.Supp. 828 (W.D.Va. 1991), for the proposition that Virginia does not recognize a duty on the part of the seller to warn of defects discovered after the sale of the product. The Magistrate Judge, however, did not address the balance of the claims asserted in the proposed amended complaint, primarily because plaintiff failed to argue the additional claims in the hearing before the Magistrate Judge.[3] On appeal, plaintiff argues that (1) the Magistrate Judge erred when he denied plaintiff's motion to amend in its entirety without addressing plaintiff's other asserted claims, and (2) Virginia now recognizes a post-sale duty to warn.

█   This court concludes that the Magistrate Judge clearly erred when he denied plaintiff's motion to amend without first addressing the alternate claims in the amended complaint. Although plaintiff failed to raise the additional claims during oral argument, the claims were before the court in the form of the motion to amend that plaintiff had filed with the court.[4] Having so concluded, this court will now determine *de novo* whether plaintiff's motion to amend should be granted, cognizant of the fact that under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires."

In *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court stated that

> in the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

---

**2.** Although plaintiff has the initial burden of filing the objection to the Magistrate Judge's ruling, defendant in the instant case has the burden of showing that it is appropriate to deny plaintiff' motion to amend. *See infra* part II.

**3.** The court notes that the hearing before the Magistrate Judge originally was scheduled to resolve the parties' motions for summary judgment. *See* Order of July 23, 1996 at 3. The Magistrate Judge only addressed plaintiff's motion to amend because the plaintiff improperly

asserted one of the proposed claims in his motion for summary judgment. *See infra* note 7. Accordingly, it is not surprising that the Magistrate Judge failed to address the balance of plaintiff's newly asserted claims.

**4.** Because plaintiff's claims were before the Magistrate Judge, albeit only in written form, plaintiff cannot, contrary to defendant's assertion, be held to have waived his claims.

of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." *Id.* at 182, 83 S.Ct. at 230. As a result, the court is bound to grant plaintiff's motion to amend absent an affirmative showing that amendment is unwarranted.

■ Apart from its claim that plaintiff waived his additional claims by not arguing the claims during the hearing before the Magistrate Judge, defendant argues that plaintiff's proposed amended complaint should be denied because of undue delay and prejudice to defendant. Defendant contends that plaintiff's new claims merely state alternate theories of recovery based on facts that were already within plaintiff's knowledge at the time plaintiff filed his initial complaint and other amended complaints. Plaintiff, however, argues that his new claims are based on evidence that was adduced during the course of depositions that were taken immediately prior to the filing of the amended complaint. In the final analysis, whether plaintiff delayed in filing the instant amended complaint is of no moment. "Delay alone, without prejudice, does not support the denial of a motion for leave to amend." *Deasy v. Hill,* 833 F.2d 38, 41 (4th Cir.), *cert. denied,* 485 U.S. 977, 108 S.Ct. 1271, 99 L.Ed.2d 483 (1988); *see also Sweetheart Plastics, Inc. v. Detroit Forming Inc.,* 743 F.2d 1039, 1044 (4th Cir.1984). Despite defendant's protestations, this court cannot find that defendant will be prejudiced by the amended complaint. Although some fact depositions have been undertaken on the issue of liability, the recent focus in the case has been on whether SPC may be held liable as a corporate successor to SI. Discovery does not appear to be "substantially complete," and in any event, the addition of the proposed claims would not require the parties to go back and re-depose an unreasonable or burdensome number of witnesses. In addition, plaintiff's proposed amended complaint is based on the same factual circumstances that underlie the amended complaint that is currently before this court. Finally, to the extent that defendant has incurred the expense of filing a motion for summary judgment, it has done so only with reference to the issue of successor liability. In short, plaintiff's motion to amend at this early stage in the proceedings will be granted because it will not unduly prejudice defendant.

■ Although plaintiff's motion to amend will be granted, this court hastens to add that this decision does not permit plaintiff to assert that SPC is directly liable for any negligent acts. Leaving aside plaintiff's assertion that Virginia recognizes an independent duty to warn, plaintiff's amended complaint as drafted does not assert that SPC is directly liable for any tortious acts. Plaintiff's entire case is premised on SPC being liable as a successor to SI. Only in oral argument before the Magistrate Judge and in a brief before this court does plaintiff assert that SPC is directly liable for any tortious acts.[5] Accordingly, any claim that SPC is directly liable for any tortious acts is not properly before the court and has not been considered.[6]

■ Moreover, this court notes that the Magistrate Judge was correct in his determination that Virginia does not recognize a duty on the part of a manufacturer to warn its consumers of dangerous defects discovered by the manufacturer after the sale of its product. In *Kimmel,* the court held that "[t]hough the duty to warn clearly is continuous from the date of manufacture/sale, it requires the manufacturer to warn only about dangerous conditions it knew about, or in the exercise of reasonable care should have known about, at that time." *Kimmel,* 773 F.Supp. at 831. Notwithstanding *Kimmel,* plaintiff argues that the Supreme Court of Virginia's more recent decision in *Harris*

---

**5.** Plaintiff now apparently attempts to assert that SPC may be directly liable for negligence arising out of SPC's actions in connection with the installation of a stop block system on the VRC. *See* November 18, 1996 Plaintiff's Response to Defendant's Objections on Motion to Amend at 5–6; Transcript of Hearing Before Magistrate Judge Crigler at 48–49 (Oct. 1, 1996).

**6.** As a result, defendant's request for the opportunity to respond to plaintiff's latest claim, *see* Defendant's Motion to Strike at 4; letter from J. Brian Jackson to the Court (Nov. 21, 1996), is moot.

*v. T.I., Inc.,* 243 Va. 63, 413 S.E.2d 605 (1992), stands for the proposition that a successor corporation has a post-sale duty to warn. *Harris,* however, did not reach the ultimate issue of whether Virginia recognizes a post-sale duty to warn. Rather, "assuming, without deciding, that in a proper case [the court] would recognize a successor corporation's post-sale duty to warn," the court concluded that plaintiff had failed to establish the "special relationship" between the consumer and successor corporation necessary to impose liability on a corporate successor. *Id.* at 72, 413 S.E.2d at 610. Accordingly, Virginia's highest court has yet affirmatively to recognize a post-sale duty to warn, especially in the case of a successor corporation.

Although cited by neither party, this court has considered *McAlpin v. Leeds & Northrup Co.,* 912 F.Supp. 207 (W.D.Va.1996), in which the court rejected *Kimmel* without citing *Harris* to conclude that "the Fourth Circuit recognizes a duty to warn under a theory of negligence in Virginia." *Id.* at 209. The court in *McAlpin* believed that the Fourth Circuit's decision in *Bly v. Otis Elevator Co.,* 713 F.2d 1040 (4th Cir.1983), and *Island Creek Coal Co. v. Lake Shore, Inc.,* 832 F.2d 274 (4th Cir.1987), supported such a finding. A review of *Bly* and *Island Creek Coal* does not persuade the court that the Fourth Circuit recognizes a post-sale duty to warn in Virginia, a conclusion that is supported by the Supreme Court of Virginia's statement in *Harris.* Having so concluded,

this court will not extend Virginia law beyond that which the state's own courts have recognized: Virginia does not, as of now, recognize a post-sale duty on the part of a successor corporation to warn of dangers and defects that it discovers, after the initial sale, are present in the product of its predecessor. That being the case, defendant may file a motion to dismiss this claim at the appropriate time, incorporating by reference, if it so chooses, the arguments that have heretofore been brought before the court with regard to plaintiff's motion to amend, in addition to any further arguments that it may wish to assert.

### III. *Cross–Motions for Summary Judgment*

Although the parties have filed numerous papers in support of their motions for summary judgment, it is clear that only two issues need concern the court at present: which state's law controls the determination of successor liability—Maine or Virginia, and can SPC be considered a successor in liability to SI under the applicable state law.[7]

### A. *Choice of Law*

■ Plaintiff argues that Virginia law determines whether SPC is liable for the acts of SI because the acts at issue occurred in Virginia; defendant contends that Maine law governs whether SPC is the successor in liability to SI because all of the actions and events leading to the transfer of assets be-

---

7. Plaintiff makes three additional objections to the Magistrate Judge's Report and Recommendation. First, plaintiff argues that SPC is liable for SI's tortious acts because there was not a *bona fide* transaction transferring SI's assets to SPC. Second, plaintiff contends that SPC entered into an express or implied contract with Perdue to assume liability for the lift project. Finally, plaintiff argues that defendant had an independent post-sale duty to warn of any potential defects and dangers that might accompany use of the VRC.

At present, there is insufficient evidence in the record to support a finding that the asset transfer was not the product of a *bona fide* arms-length transaction. In addition, if SPC entered into an agreement with Perdue to assume liability for the project, there would be no need to rely on the doctrine of successor liability. All of plaintiff's complaints, however, are premised on the belief that SI contracted with Perdue to install a VRC, and that SPC is liable as SI's successor for the

tortious acts of SI. Accordingly, this objection is without merit. Finally, plaintiff's claim that an independent duty to warn exists is not properly before the court on the plaintiff's motion for summary judgment because plaintiff's motion to amend his complaint had not been acted upon at the time that the parties filed their motions for summary judgment. Plaintiff's inclusion of this objection is in error because the Magistrate Judge's decision with respect to this issue came in the form of a denial of plaintiff's motion to amend. *See* October 8, 1996 Order (denying motion to amend "on the ground that the proposed amendment would be futile as the law of Virginia does not recognize an independent duty on the part of a successor corporation to warn"). This court will not address plaintiff's objection on this issue in the context of his motion for summary judgment because the Magistrate Judge quite properly made no recommendation on the issue. For the foregoing reasons, plaintiff's additional objections are denied.

tween SI and SPC took place in Maine and the issue is contractual in nature. Under the principles of *depecage,* "different issues in a single case arising out of a single set of facts may be decided according to the law of different states." *Buchanan v. Doe,* 246 Va. 67, 71, 431 S.E.2d 289, 291 (1993) (quoting Robert A. Laflar, *American Conflicts Law* § 109, at 221–22 (3rd ed. 1977)). Because a federal court sitting in diversity applies the choice of law rules of the forum state, *see Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), this court will consult Virginia law to determine which state's law is appropriate in the context of successor liability.

■ Virginia has never determined whether successor liability is an issue of tort or contract. In determining whether an issue is more appropriately characterized as an issue of tort or contract, this court has noted:

> if characterized as a tort claim, the doctrine of *lex loci delicti* applies and requires Virginia law to govern the matter.... If characterized as a contract claim, then Virginia choice-of-law decisions require the effect of the contract to be governed by the law of the place where the contract was made.

*Ryder Truck Rental, Inc. v. UTF Carriers, Inc.,* 790 F.Supp. 637, 641 (W.D.Va.1992). In *Buchanan v. Doe,* the Supreme Court of Virginia explained:

> The word "tort" has a settled meaning in Virginia. "A tort is any civil wrong or injury; a wrongful act (not involving a breach of contract) for which an action will lie."
>
> . . . .
>
> On the other hand, a contract is defined as "[a]n agreement between two or more persons which creates an obligation to do or not to do a particular thing."

*Buchanan,* 246 Va. at 71–72, 431 S.E.2d at 291–92 (citations omitted).

A finding of successor liability is derived from an analysis of the relationship between two corporate parties and the agreements undertaken between those parties. The agreements necessarily impose obligations and responsibilities on a party. A determination of whether these responsibilities include successor liability for the prior tortious acts of the former corporation is more appropriately characterized as an issue of contract rather than tort. *See Brown v. Kleen Kut Mfg. Co.,* 238 Kan. 642, 714 P.2d 942, 945 (1986) (noting that "the law of the jurisdiction where the corporation was formed, and where the transfer of corporate stock and assets took place, should govern the liability of a dissolved predecessor corporation and its successor corporation for injuries arising from use of a product manufactured by the dissolved predecessor corporation"); *Bonee v. L & M Const. Chems.,* 518 F.Supp. 375, 379–80 (M.D.Tenn.1981) (applying contract law "[b]ecause the basic question in [a] case [of successor liability] is what is the legal effect of the sale of virtually all of the assets of one corporation to another corporation"). *But see Young v. Fulton Iron Works Co.,* 709 S.W.2d 927, 935 (Mo.Ct.App.1986) (rejecting *Bonee* to apply tort law to the determination of a successor's liability). Virginia has an interest in seeing that its citizens are properly compensated for injuries suffered as a result of the tortious acts of out-of-state corporations, "[t]he rights of a corporation that contracts in [a state] to purchase the assets of another corporation should be the same with respect to assumption of liability for personal injuries regardless of where the personal injury occurs." *Bonee,* 518 F.Supp. at 380. Otherwise, a corporation that contracted to purchase another corporation potentially could face fifty different interpretations of successor liability, thus imposing excessive costs on the successor corporation and discouraging otherwise prudent corporate combinations. *See Jordan v. Hawker Dayton Corp.,* 62 F.3d 29, 31 (1st Cir.1995), *cert. denied,* ⸺ U.S. ⸺, 116 S.Ct. 913, 133 L.Ed.2d 844 (1996). Accordingly, this court will apply Maine law to determine whether SPC is the corporate successor to SI.

## B. *Corporate Successor Liability*

■ Under Maine law,

absent a contrary agreement by the parties, or an explicit statutory provision in derogation of the established common law

rule, a corporation that purchases the assets of another corporation in a *bona fide*, arm's length transaction is not liable for the debts or liabilities of the transferor corporation.

*Director of Bureau of Labor Standards v. Diamond Brands, Inc.*, 588 A.2d 734, 736 (Me.1991); *see also Jordan*, 62 F.3d at 31 (quoting *Diamond Brands* in the context of a tort proceeding).

Plaintiff argues that SPC is liable as a successor corporation because it (1) expressly agreed to assume SI's liability for inherent design defects in the VRCs; (2) impliedly agreed to assume SI's liabilities; (3) was a mere continuation of SI; and (4) represented the *de facto* merger of the two corporations.

■■■■ Although the state courts of Maine have not addressed the issue, federal courts have concluded that Maine does not recognize the doctrines of mere continuation and *de facto* merger. *See Jordan*, 62 F.3d at 32; *Saco River Tel. & Tel. Co. v. Shooshan & Jackson, Inc.*, 826 F.Supp. 580, 582–83 (D.Me.1993). Plaintiff concedes that the *de facto* merger doctrine is unrecognized in Maine, but argues that the mere continuation theory is still viable. In support of his conclusion, plaintiff argues that *Saco River* simply rejected the "continuity of enterprise exception," which plaintiff understands to have different meaning than the mere continuation theory. Even if this court were to ignore *Jordan* and interpret *Saco River* in the way that plaintiff would have the court interpret it, this court would still refuse to recognize the mere continuation theory in Maine. A court should be "generally reticent to expand state law without clear guidance from [a state's] highest court." *Taylor v. Phelan*, 9 F.3d 882, 887 (10th Cir.1993); *see also Ryan v. Royal Ins. Co. of America*, 916 F.2d 731, 744 (1st Cir.1990) (noting that "litigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed"). Given the Supreme Judicial Court of Maine's seemingly absolute pronouncement in *Diamond Brands*, this court will not expand singlehandedly Maine's interpretation of successor liability to embrace the mere continuation theory. Accordingly, plaintiff will not be permitted to argue mere continuation and *de facto* merger theories in an attempt to establish the successor liability of SPC.

■■■ In contrast, although the state courts of Maine have not addressed the issue of whether a successor may expressly or impliedly agree to assume a predecessor company's liabilities for personal injuries, such theories would not appear barred by *Diamond Brands*. *See Diamond Brands*, 588 A.2d at 736 (simply referencing "an agreement" between parties as a justification for assessing successor liability). Plaintiff, however, has failed to present sufficient evidence of an express agreement between SI and SPC such that this court could conclude that SPC explicitly agreed to assume liability for personal injuries caused by SI's products.

Plaintiff cites a July 9, 1987 letter from Brian McNamara to Capital Equipment as evidence of an express agreement by SPC to assume SI's liabilities. In the letter, McNamara, the vice-president/general manager of SPC, explained that SPC would take responsibility for fixing defects in the design and performance of the VRCs that originally were sold to Perdue by SI. An express agreement is one "in which the terms and stipulations are specifically declared and avowed by the parties at the time of making the agreement." *Black's Law Dictionary* 62 (ed. 1979). Although plaintiff may be correct in concluding that the letter evidences SPC's express assumption of responsibility for solving the problems and completing the project, there is no explicit statement that defendant accepted liability for personal injuries arising out of use of the predecessor corporation's product. Other correspondence and contact between defendant and Perdue or Capital Equipment suffers the same defect. Moreover, any express assumption of liability in the context of a claim of successor liability must occur between the parties to the corporate combination; namely, SPC and SI, at the time of that combination. Any statements by SPC to Capital Equipment are not evidence of an express agreement, although such statements might imply such an understanding. Accordingly, plaintiff's attempt to establish successor liability premised on an

express agreement between SPC and SI will fail.

▮ Plaintiff, however, has established an issue of material fact as to whether an implied agreement existed between SPC and SI such that SPC agreed to assume liability for injuries arising out of its predecessor's products. An implied agreement is one in which the agreement is "inferred from the acts or conduct of the parties, instead of being expressed by them in written or spoken words." *Id.* In *City of Richmond v. Madison Mgt. Group, Inc.*, 918 F.2d 438 (4th Cir.1990), the court recognized that factors to consider in determining whether an implied agreement exists include whether the successor (1) used the same or a similar name to the predecessor; (2) took credit for the predecessor's work on the project; (3) assumed responsibility for completing the project; (4) made efforts to collect money under the project; or (5) participated in repairs to the predecessor's work. *Id.* at 450–51. In the instant case, plaintiff asserts that SPC continued to do business under a similar name and continued to use SI's letterhead for some time after the transfer of assets. SPC, like its predecessor, was simply referred to as "Southworth." In addition, SPC continued to participate in repairs to the elevator, including paying for repairs and recommending changes. Moreover, SPC appears to have expressly agreed to see the project through to completion. Finally, there is some evidence that SPC took credit for the SI's work. All of these facts suggest that an implied agreement may have existed between SPC and SI whereby SPC consented to accept liability for injuries arising out of SI's prior tortious acts. Nevertheless, such evidence is in dispute and thus will not support granting plaintiff's motion for summary judgment.

▮ Defendant argues that Maine does not recognize implied agreements as a basis for imposing successor liability and that *City of Richmond* is inapplicable because Maine law controls. Defendant's arguments are unpersuasive. Initially, the court notes that *City of Richmond* merely provides certain factors that are instructive in determining whether an implied agreement exists. This court considers the Fourth Circuit case persuasive rather than controlling. Next, although the First Circuit in *Jordan* appeared to consider implied agreements one of the exceptions to the general rule that a purchasing corporation will not be held to have assumed the liabilities of the selling corporation, there is no indication that Maine has rejected the exception simply because it is recognized by a majority of the states. Instead, a careful reading of the court's treatment of the issue in *Jordan* reveals that in discussing exceptions to the general rule, the court also considered *express* agreements, an exception that is clearly permissible under Maine law. *See Jordan*, 62 F.3d at 32 (noting that "[t]here was no agreement by [the successor corporation], express or implied, to assume the liabilities of [the selling corporation]"). Maine's highest court has stated that successor liability can only attach if there is an agreement between the parties or if a statutory provision acts to trump the common law. It is not unreasonable to construe "agreement" to include implied as well as express agreements. Accordingly, there being an issue of material fact as to whether such an implied agreement was created, this court will permit the instant case to go forward on the basis that plaintiff may establish that SPC impliedly agreed to be liable for the prior tortious acts of SI.

For the foregoing reasons, plaintiff's motion for summary judgment will be denied and defendant's motion for summary judgment will be granted in part and denied in part.

An appropriate order this day shall issue.